Tarlton *v.* Peggs.

————◆◆◆————

## TARLTON *v.* PEGGS.

When the Legislature, on the day of its final adjournment, in the due course of legislation, sends a bill to the Governor for his official action, and he, on the same day, and after the final adjournment of the Legislature, files it in the office of the Secretary of State, without approval or objections thereto, it becomes a law, and he can not thereafter file objections, and, if it contain an emergency clause requiring it to take effect from and after its passage, it shall be in force from and after such filing.

APPEAL from the *Johnson* Circuit Court.

HANNA, J.—*Peggs* sued appellant for the seduction of his daughter. The case was tried on the 15th of March, 1861. *Tarlton* offered himself as a witness to testify generally in the case, and as to certain matters material to the issue being tried. He was not permitted to testify. This ruling presents the point in the case. Was the statute, of March, 1861, admitting parties as witness, in force at the time of the offer. Acts 1861, p. 52. The certificate of the Secretary of State shows that it was filed in his office on the 11th of March, 1861, at 5 o'clock in the afternoon, without the approval of the Governor, and without objections thereto being filed. The general adjournment of the Legislature was on that day at an earlier hour.

It is provided in the 14th sec., art. 5, of the constitution of

Indiana, that "if any bill shall not be returned by the Governor within three days, Sundays excepted, after it shall have been presented to him, it shall be a law, without his signature, unless the general adjournment shall prevent its return; in which case it shall be a law, unless the Governor, within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of the Secretary of State," &c.

This provision was intended to prevent the possibility of the Governor withholding a bill and thus preventing its becoming a law. Under it, we think it clear that we should presume a bill, filed by him after the adjournment, had come into his hands so recently before the adjournment, as to prevent his acting upon it, rather than to presume he had it in possession and held it more than the three days named before such adjournment. That would be the presumption here in the absence of any thing in the records of the case, or of the co-ordinate departments of the government, falling within our notice, showing when it was presented to him. It is clear also that the Governor could, if he saw proper, hold the bill for the five days named, before either it, or the reasons for not signing it, if any should be given, should be filed. If this bill had been thus held up, for that length of time, the period would have extended beyond the day when this trial was had. Could the Governor have rightfully filed objections to the bill within that time, notwithstanding he had filed the bill itself at the time he did. If he had that right, then the question would arise whether the law can be said to have any force or effect until that period of time had elapsed. The act contains a clause declaring an emergency exists and that it shall be in force from and after its passage. What is the passage of an act, so that it shall be considered a law, under our constitution? Clearly it requires the concurring acts of the two houses of the legislative department, and of the Governor in

approving, or in determining to withhold his approval, in the manner pointed out. A proposed statute can not be treated as passed and in force within the three days the Governor has it under consideration during the sittings of the Legislature; otherwise it might be acted upon in important particulars during this intervening time; and then be defeated by the veto of that officer. So if any act goes through all the requisite forms in the two houses, but does not pass into the hands of the Governor until so late a period of the session as to give him five days after the adjournment to consider it; we can not see that it should in that time, if it remains in the hands of the Governor, be treated as having passed; for in reality it will not have passed through both departments of the Government. This brings us back to the question, whether an act can be considered and treated as being passed when thus filed by the Governor, on the first of the five days to which he is entitled for consideration, without his signature and without anything accompanying it to show whether, within the five days, he intends to file objections, or further consider as to that question. He might not file it until the last hour, for he might not until that time conclude as to his course upon it. Until then, under such circumstances, it would not have passed. He might file it on the first of the five days, under the conclusion in his own mind that he would not object, but before the expiration of that time he might see good reasons to change that determination. If so, could he rightfully act upon such changed determination, and file objections?

Among other duties devolved upon the Secretary of State, is that of keeping and preserving the manuscripts containing the enrolled acts, &c., of the General Assembly, &c. 1 R. S. 435. As this officer is thus, by the fundamental and statute law, made the custodian of recently passed acts of the Legislature—his office is the place where the citizen should apply

for official information in reference to such laws; both as to the time at which they shall take effect, and the contents thereof; it would seem that when acts of the Legislative department have, as in this instance, passed into the hands of this custodian, that they should be regarded as having thus far passed through the ordeal provided by the constitution. In other words, it should be presumed that the Governor has discharged his official duty, and, after due consideration, had concluded to file no objections to the proposed law, and that from thence forward his constitutional right to object no longer exists, and, if no other objection intervened, they should be regarded as operative.

It follows that the ruling of the Court was erroneous.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded.

*R. L. & T. D. Walpole* and *S. P. Oyler*, for the appellant.

*Thos. W. Woolen, G. M. Overstreet* and *M. C. Hunter*, for the appellee.