Van Dorn v. Bodley.

———•———

## VAN DORN v. BODLEY.

STATUTE OF LIMITATIONS OF ANOTHER STATE.—Where, in a suit upon a promissory note, the defendant answered that at the time of the execution of the note he was, and ever since had been, a resident of the State of California, and that a law of that state limits the bringing of such actions to four years, a reply that the plaintiff was a resident of the State of Indiana when the note was executed to him, and that payment was to be made here, was held insufficient.

PLEADING.—*Departure.*—*New Promise.*—A reply of a new promise to an answer of the statute of limitations is not a departure.

SAME.—*Lost Instrument.*—Where an instrument should be filed or copied with a pleading, an averment of its loss, and proper search for it, excuses the failure to exhibit it.

APPEAL from the Fountain Circuit Court.

DOWNEY, J.—The appellee sued the appellant on three promissory notes executed by the appellant to the appellee, in California, on the 22d day of January, 1855, two of which were payable generally and one payable in the town of Covington, Fountain county, Indiana.

The defendant pleaded the statute of limitations of California, which bars actions upon promissory notes in four years, alleging that he was, when the notes were executed, and ever since had been, a resident of that state.

The plaintiff replied, first, the general denial; second and third, a new promise made by the defendant, in writing, within four years prior to the time of the commencement of the action; fourth, the fourth paragraph of the reply was stricken out on the motion of defendant; fifth, that at and from the date of the contracts sued upon, the defendant was a non-resident of the State of Indiana, and was a non-resident at the time of the commencement of this suit; and that at the time of making the contracts, the payee was a resident of the State of Indiana; and that said contracts were to be performed in the State of Indiana.

Demurrers to the second, third, and fifth paragraphs of the reply were overruled, and exceptions taken.

At the instance of the defendant, the court made a special finding and stated its conclusions of law. The defendant excepted to the finding as to the facts, as well as to the conclusions of law; and also moved for a *venire de novo*, which was overruled, and final judgment rendered for the plaintiff. There is no evidence nor any bill of exceptions in the record.

The only questions involved in the case are those upon the demurrers, and the conclusions of law upon the special finding.

The first question in natural order for consideration is, whether the statute of limitations of California is a good bar to the action. Our statute of limitations provides: "The time during which the defendant is a non-resident of the State, or absent on public business shall not be computed in any of the periods of limitation. But when a cause has been fully barred by the laws of the place where the defendant resided, such bar shall be the same defence here as though it had arisen within this State." It is the last sentence of this section which is relied upon in this case. The

position of the appellee's counsel is, that the clause can only apply to such persons as have resided in another state or country until the cause of action has been barred by the statute of such state or country, and have then become residents of this State; and that it does not apply to one against whom a cause of action has existed, which is barred by the law of the place of his residence, who is sued in this State while he is yet a non-resident of this State. It is said that in printing this clause of the section, the word "has," immediately before the word "resided," has been omitted. But, perhaps, the supplying of that word would not materially change the meaning of the clause. If it was material, could we regard it as part of the statute without its having been "published and circulated" as such according to the constitution? We think the construction of this clause contended for by counsel for the appellee, cannot be adopted. There is nothing in the language used which conveys the idea that the defendant must have ceased to reside in the place where he resided or "has" resided up to the time when the period of limitation expired, and has then become a resident here, in order to authorize him to claim the benefit of this section of the statute. It is our opinion that the court erred in overruling the demurrer to the fifth paragraph of the reply.

It is not necessary to consider separately the second and third paragraphs of the reply. They set up a new promise, made in writing, and allege that the writing has been lost, and, on careful and diligent search, cannot be found. There are two objections urged to these paragraphs of the reply; first, that the written instrument referred to in them is not filed with them, nor any sufficient excuse for not doing so shown; and, second, that they depart from, or are inconsistent with, the complaint. We think neither of these objections well taken. If an instrument which, or a copy of which, should otherwise be filed with a pleading has been lost, and on diligent search cannot be found, we see no other way than to dispense with the filing of it. At common law, profert of a lost instrument need not be made, when sued

on in a court of law, if that fact was alleged as an excuse for not doing so; though in suits in chancery, an affidavit was required in support of a bill for relief upon a lost instrument. Following the case of *Blasingame* v. *Blasingame*, 24 Ind. 86, and the reasoning therein, we hold that it is sufficient to allege, in a pleading founded on a lost instrument, that it is lost and cannot be found, after careful and diligent search, to excuse the filing of the same, or a copy of it, with the pleading, without an accompanying affidavit.

To reply a new promise to pay a debt otherwise barred by the statute of limitations, is no departure.

It is conceded that it was not at common law; but it is claimed by counsel for appellant, that under the code it is different. We are referred to section 67 of the code, which authorizes the plaintiff, in his reply, to state "any new matter not inconsistent with the complaint." That was precisely the rule before the code. The replication must be consistent with the declaration.

As early as the case of *Zehnor* v. *Beard*, 8 Ind. 96, it was said by this court, that "the inconsistency of the reply and the complaint is the same defect known in the old system as a departure in pleading." The practice is to declare upon the original promise, and when the statute is pleaded, to reply the new promise. The new promise is a waiver of the right to rely upon the statute, or its effect is to revive the former cause of action and give it vitality. Angell Limitations, sec. 288. That the new promise is now required to be in writing, does not change this rule.

Objection is made to the special finding of the court, on the ground that it does not specially find the existence of the statute of limitations of the State of California. But the evidence not being in the record, we cannot say that the court did not find all that the evidence justified. But suppose that the special finding did show that there was such a statute of limitations of California as set out in the answer; it shows also that the defendant made the new promise in writing, as alleged in the reply. The statute contains the

same provision as our own with reference to a new promise, requiring that it shall be in writing and signed by the party to be charged thereby. The court found that the defendant promised in writing to pay the notes within four years before the commencement of this action. This was a good reason why the statute of limitations of California was no defence to the action; and notwithstanding the second and third paragraphs of the reply were bad, this one being good and having been found to be true, the plaintiff was entitled to judgment in his favor.

The judgment is affirmed, with one per cent. damages and costs.

BUSKIRK, J., (dissenting).—Being unable to give my assent to the views expressed, and conclusion reached, in reference to the statute of limitations, I feel constrained by a sense of duty to state somewhat at length the grounds of my dissent and to make my views fully understood, I deem it necessary to make a fuller statement of the facts than is found in the opinion of the majority of the court.

Suit was brought in the Fountain Circuit Court by Bodley upon three promissory notes, dated January 22d, 1855, and falling due one, two, and three years after date. The notes were given by appellant to the assignor of appellee, and for a balance due upon a settlement. The appellant was, at the time, a resident of California, and has ever since resided in that state. One of the notes is payable in the town of Covington, Fountain county, Indiana; the others contain nothing indicating the place where payable.

Proceedings in attachment accompanied the complaint, and certain lands of the appellant were attached. Judgment was rendered against the attached lands, and an order of sale made. At a subsequent term, the appellant filed his petition, under sections 43 and 44, 2 G. & H. 66, to open the judgment and to be allowed to defend. The judgment was opened and issues were joined, and a trial had, which resulted in a judgment for the appellee.

Van Dorn *v*. Bodley.

The complaint was as follows: Charles M. Bodley complains of Henry Van Dorn, and says that said Van Dorn is indebted to him in the sum of thirty-one hundred and fifty dollars, as evidenced by his three several promissory notes, dated January 22d, 1855, and payable to John Bodley, copies of which are herewith filed and made a part of this complaint; that said John Bodley afterward assigned said notes to this plaintiff; that said notes are now due and unpaid. Wherefore plaintiff demands judgment for thirty-two hundred dollars.

The notes were in these words:

"$500.                        JANUARY 22d, A. D. 1855.

"For value received, three years after date I promise to pay to John Bodley, or order, five hundred dollars, with interest from date till paid.

[Signed:]                        "HENRY VAN DORN."


"$500.                        JANUARY 22d, 1855.

"For value received, two years after date I promise to pay to John Bodley, or order, five hundred dollars, with interest from date till paid.

[Signed:]                        "HENRY VAN DORN."


"$800.        "BIG SLOUGH, SACRAMENTO RIVER,    ⎞
                CALIFORNIA, January 22d, 1855. ⎠

"For value received, three years after date I promise to pay to John Bodley, or order, eight hundred dollars, with legal interest till paid, payable in the town of Covington, Fountain county, Indiana.

[Signed:]                        "HENRY VAN DORN."


The answer and copy of the statute of the State of California, made an exhibit in the answer, are as follows:

The defendant, for answer to the plaintiff's complaint, says that at the time of the execution of the notes in said com-

plaint mentioned, and since that time, he has been a *bona fide* resident of the State of California, and during such residence in said state more than four years elapsed after said plaintiff's cause of action in complaint mentioned accrued, prior to the 1st day of April, 1868, when this suit began; that all of the notes in said complaint mentioned were executed in the said State of California, where both parties thereto resided at the time, and that by the statute of limitation of said State of California, said cause of action was fully barred at the date aforesaid of the commencement of this action, a copy of which statute is herewith filed, marked "C," and made a part of this answer; wherefore defendant says that said cause of action is barred by the statute of limitations. He therefore demands judgment for costs and other proper relief.

Copy of statute, exhibit "C," Statutes of California, chapter one, article one.

"Sec. 1. Civil actions can only be commenced within the periods prescribed in this act, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."

"Sec. 17. Actions, other than those for the recovery of real property, can only be commenced as follows: Within five years, an action upon a judgment or decree of any court of the United States, or of any state or territory within the United States. Within four years, an action upon any contract, obligation, or liability founded upon an instrument of writing, except those mentioned in the preceding section. Within three years, first, an action upon a liability created by statute, other than a penalty or forfeiture; second, an action for trespass upon real property; third, an action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property; fourth, an action for relief on the ground of fraud, the cause of action in such case not to be deemed to have accrued until a discovery, by the aggrieved party, of the facts constituting the fraud. Within two years, first, an action upon a contract, obli-

gation, or liability, not founded upon an instrument of writing, except an action on an open account for goods, wares, and merchandise, and an action for any article charged in a store account; second, an action against a sheriff, coroner or constable, upon the liability incurred by the doing of an act in his official capacity, and in virtue of his office, or by the omission of an official duty, including the non-payment of money collected upon an execution." * * * *

"Sec. 31. No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this statute, unless the same be contained in some writing signed by the party to be charged thereby."

The reply was in these words:

1st. General denial.

2d. Plaintiff says within four years prior to the commencement of this suit, the defendant promised in writing to pay the money due on the notes sued upon; that said promise was made by defendant to John Bodley, the payee in said notes and plaintiff's assignor, in the month of February, 1866, and was contained in a letter then written by defendant to said John Bodley, who was then the owner and holder of said notes and the person to whom they were due and payable; that in said letter written and signed by him, defendant acknowledged his liability to pay said notes, and promised to pay the same; that said letter is lost and cannot be found by plaintiff or said John Bodley, although careful and diligent search has been made therefor in the places where it would most likely be found, for which reason plaintiff is unable to file a copy thereof with this reply. Wherefore, etc.

3d Par. In all respects, like the second paragraph, except that the promise is alleged to have been made in a written instrument, without stating what kind of an instrument it is, or to whom it was executed, and the time is not given when it was executed, except within the four years.

4th Par. Stricken out.

5th. Plaintiff, further replying, says that at the date of the

contracts sued upon in this action, and for a long time before, and ever since that time, the defendant has been a non-resident of the State of Indiana, and that at the time of the commencement of this suit he was a non-resident of said state, and is now a non-resident thereof; and that at the time of making said contracts the payee therein was a resident of the State of Indiana, and that said contracts were to be executed in the State of Indiana, and were to be performed there. Wherefore, etc.

The defendant demurred to the second, third, fourth, and fifth paragraphs of the reply, separately and distributively, because neither of them states facts sufficient to constitute a defence to defendant's answer; which the court overruled, and the defendant excepted.

The defendant moved to strike out second, third, and fourth paragraphs of the reply, which motion was sustained as to the fourth, but overruled as to the second and third paragraphs, and the defendant excepted.

Upon request of defendant, the court made a special finding, a jury being waived and the cause submitted to the court:

"The court finds all the notes sued on, to wit, two notes each for five hundred dollars, due respectively one and two years after date, with interest from date, and one for eight hundred dollars, due three years from date, payable in the town of Covington, Fountain county, Indiana, were executed by Henry Van Dorn, defendant, to John Bodley, on the 22d day of January, 1855, and afterward, in the year 1864 or 1865, were assigned by indorsement to Charles M. Bodley, the plaintiff. The court further finds that at the time of the execution of said notes, the maker, Van Dorn, was a resident of the State of California, and has been ever since, and still is a resident of that state, and that all of said notes were made and delivered to the said John Bodley in said state, but that said Bodley was at the time a resident of the town of Covington, in the State of Indiana, and subsequently resided there for several years; and that immediately after said notes

Van Dorn *v.* Bodley.

were delivered to him, he returned home to the State of Indiana, bringing with him the notes, and continued to hold possession of them until assigned to plaintiff. The court further finds that said notes were all given for the same and one entire consideration, being for a balance due on settlement between the said defendant and John Bodley, the payee of the same; that all of said notes were to be paid in Covington, in the State of Indiana. The court finds upon the foregoing facts as a conclusion of law, that the collection of said notes is to be governed by the statute of limitations of the State of Indiana, and not of the State of California, and the right of recovery is not therefore barred. And the court further finds that said defendant promised, in writing, to pay said notes within four years before the commencement of this action. The court, upon the foregoing facts, finds for the plaintiff in the sum of three thousand four hundred and forty-seven dollars, being the amount of said notes and the interest thereon.

"John M. Cowan."

To which finding by the court as to the facts, as well as the conclusions of law, the defendant excepts, and also moves the court for a *venire de novo*, which motion is by the court overruled, to which ruling and refusal of the court to grant a *venire de novo*, the defendant excepts. Judgment for three thousand four hundred and forty-seven dollars, and land attached ordered to be sold as other lands on execution are sold. Appeal prayed to Supreme Court.

The principal question in the case is as to the validity of the last paragraph of the reply.

The appellant claims that the right to plead the statute of California as a bar to the action is given him by section 216, 2 G. & H. 161. The latter clause of that section is not correctly copied into the printed statute. The section, as contained in the enrolled act, is as follows: "The time during which the defendant is a non-resident of the State, or absent on public business shall not be computed in any of the

periods of limitation.   But when a cause of action has been fully barred by the laws of the place where the defendant has resided, such bar shall be the same defence here as though it had arisen within this State."

That clause of section 216, relied upon by the appellant, is fairly susceptible of but two readings; first, "where a cause of action has been fully barred by the laws of the place where the defendant has resided," prior to becoming a resident of this State; or, second, "where a cause of action has been fully barred by the laws of the place where the defendant has resided" prior to the commencement of the action.

In the construction of statutes there are certain rules to be observed, and certain recognized means to be resorted to, to aid us in arriving at a proper and correct interpretation. We must ascertain what the law was before the statute, and what the evil it was intended to remedy.   We may look to the history and condition of the country at the time of the enactment of the statute.   4 Abbott Nat. Digest, 226.   The statute must be construed together with other statutes relating to the same subject, and with the other parts of the same statute.   Sedgw. Stat. Law, 233; Smith Const. Constr. 648, 761.

The consequences which would flow from any particular construction must be observed; and if the statute be fairly susceptible of two different constructions, the court is at liberty to choose that one which, while it remedies the mischiefs aimed at, avoids absurd or unjust consequences which would flow from the other.   *Terrill* v. *Auchauer,* 14 Ohio St. 80.

The purpose of the statute in question is obvious.   Without this statute, *lex fori* would govern in every case, even where both parties had remained domiciled in the foreign state until the cause was fully barred there.   The object of the statute was to create an exception to this rule, and not to abolish it altogether.

The evil of the common law rule, as applied to Indiana,

with a statute barring simple contract debts only after the lapse of twenty years, was that it would prevent emigration to this State from states having a shorter limitation. And when we remember that at the time this statute was enacted, every sister state had a shorter limitation than Indiana, and that the policy of Indiana, in common with the other western states, was to increase her population as rapidly as possible, the necessity and propriety of the enactment under consideration fully appear.

The statute remedies the evil by saying to the citizens of other states, "you shall be in no worse condition by becoming a citizen of Indiana than you now are; and if you have a perfect defence now, under the limitation laws of your place of residence, you shall not lose it if you remove to this State." The purpose of the statute is to protect those who become citizens of the State from suits upon contracts barred prior to their removal into this State, by the law of their prior residence. In this view, the statute is in harmony with the general policy of the State.

This is the light in which similar legislation in other States has been viewed by the courts. In *Hays* v. *Cage*, 2 Texas, 501, the court say: "The rule, that the law of limitations of the country where a contract is made is no bar to a suit in a foreign tribunal, has become a formulary in international jurisprudence, and, indeed, is not now controverted.

"It was doubtless the object of the section of our statute referred to to create an exception to the rule, and to enable a defendant, whose liability was barred by the laws of the country from which he emigrated previous to the period of his emigration, to plead that fact in bar of the action here. It was the policy of the law to admit this defence and to give the defendant the benefit of it precisely in the same manner and to the same extent as if he had been sued in the country of his former domicil, after the statute of limitations had closed upon the demand, and before his removal to this country. But it could not have been intended to give the laws

of a foreign country, *proprio vigore,* any force or validity here."

In *Sloan* v. *Waugh,* 18 Iowa, 224, DILLON, J., says : "In the absence of a statute to the contrary, the law is, that a debt, barred by the statute of a State in which it was contracted, is not barred by the laws of another State in which suit may be brought.   *   *   *   Hence, a note might be barred against the maker in North Carolina, and he afterward removing to Iowa, where the limitation time was longer, could not plead the North Carolina statute in bar.   It was to obviate this effect, and to settle any question of this nature which might be supposed to exist, that section 2746 of the Revision was enacted.   That section is as follows :   'When a cause of action has been fully barred by the laws of any country where the defendant has previously resided, such bar shall be the same defence here as if it had arisen under the provisions of this chapter.'   To enable a party to avail himself of this section, he must show that he has, previously to his removal to Iowa, resided in another State, by the laws of which the cause of action 'has been fully barred.'"

In *Petchell* v. *Hopkins,* 19 Iowa, 531, the same question was considered, and the court, by DILLON, J., says : "Under this section the bar of the other state or country (if this be relied on) must be complete by the laws of such state or country.   The cause of action must be 'fully barred;' and it must be barred during the time the defendant has resided there; at least the bar must be complete previous to the time the defendant becomes a resident of Iowa.   The defendant, 'previously' to coming into this State, must have 'resided' in another state, by the laws of which the cause of action must have been 'fully barred.'"

In the last case cited, the answer was held bad for not showing when the defendant left the foreign State and became a resident of Iowa.   It will be observed that the same defect exists in the answer in this case.

The grammatical construction of the statute accords

with the view above expressed. The statute speaks in the perfect tense. "This tense denotes," says Mr. Kirkham, " past time, and also conveys an allusion to the present. Its grammatical signification is that the action, though past, was perfectly finished at a point of time immediately preceding or in the course of a period which comes to the present. It specifies, not only the completion of the action, but also alludes to the period of its accomplishment."

Mr. Pinneo says: "This tense denotes a past time completed at the present time;" as, for example, he has resided. Here the action of residing has been going on in past time, but is completed. "When," continues this author, " I say, 'he has read the book,' I do not in any sense mean, he is now reading it." Pinneo's Analytical Grammar, p. 69, art. 164.

So, when the statute says, "where the defendant has resided," it excludes the idea of his residing there at the time of setting up the bar.

The grammatical construction, then, is precisely that of the Iowa statute, and brings the case within the Iowa decisions—"has resided" and "has previously resided" being synonymous in their grammatical signification, and, without doubt, in the legislative intention. Any other construction will defeat the object of the statute and lead to consequences absurd and unjust.

If the statute is construed to refer to the place of residence prior to the bringing of the suit, that place would be, of course, where the defendant resided immediately before. It would mean, his last place of residence before the suit was brought. To give any other meaning to the language of the statute, assuming this to be the true construction, would outrage every principle upon which our language is predicated. It cannot be maintained that a defendant would have the right to select any one of the many different places where he had resided between the time of making the contract and the time of bringing the suit, and set up in bar the law of that place which might be the most favorable to him.

The statute says, "when a cause of action has been fully barred by the laws of the place," not any place, but "the place where the defendant has resided."

We have just seen that the language used in the statute conveys the idea of an action which, though past, was perfectly finished at a point of time immediately preceding, or in the course of a period which comes to the present. The statute contemplates but one place of prior residence, and if this construction is to be given the statute, that place of residence is the one where the defendant resided immediately prior to the commencement of the action. This construction would, therefore, entirely defeat the object of the statute in every case where, after making the contract, the non-resident debtor should become a resident of this State; for, if the law of the place of residence prior to the suit is to govern, then a party, after becoming a resident of Indiana, would be subject to the Indiana statute. In this view, it would only be the non-resident who could avail himself of the foreign statute. Did the legislature create an exception. to the common law rule only to put non-residents upon a better footing in our courts than residents? Such legislation would be .contrary to the settled policy of every state, and is not at all required by the comity of nations. Story Confl. Laws, sec. 578.

Any other construction than the one I am seeking to establish would nullify the first clause of the section, except only as to persons who might be residents of states whose periods of limitation are longer than ours. For instance, if a defendant is allowed, while he is a non-resident, to ·claim the benefit of the statute of the state of his residence, then every defendant who is a non-resident would rely upon the foreign statute, unless in the given case it happened that the foreign statute was a longer one than the statute of this State. This is the precise result which the counsel for the appellant claims for the construction he gives the statute. He says: "In all cases, without regard to the defendant's present residence, he is deprived of counting any of the

time he has been absent on public business, or a non-resi-
dent of the State, to make up any of the periods of limita-
tion in our statute. While he may not do that, and perfectly
consistent with that inhibition, if he, during such non-resi-
dence, has resided long enough in any other state or country
to bar the action, he may set that up as his defence instead
of the Indiana statute. But if he has not resided long
enough in any other state or country to bar the action, then,
the first clause operates upon him again to prevent him from
computing any of the periods of limitation in our statute,
should he attempt to set it up in default of the foreign stat-
ute." Now, when it is remembered, that by the very statute
in which the section under consideration is found, Indiana
has adopted a longer period of limitation than any of her
sister states, it is at once seen that the first clause of the
section is completely nullified by the construction given to
the second clause by the appellant.

If the demand against a non-resident was not barred, in
any given case, by the laws of his own state, of course it
would not be barred by the law of Indiana, and there would
be no need to deduct the period of his non-residence under
the first clause of the statute; and long before the period
prescribed by the Indiana statute had expired, the bar would
be complete by the law of the debtor's own state, and he
would not need to invoke the aid of the Indiana statute. At
the time of the enactment of this statute, I believe there were
not more than two, if any, of the states or territories of this
Union that had so long a period of limitation as we then
adopted. The periods of limitation ranged from three to
seventeen years, the majority being six years and under.
Can it be possible, then, that the legislature deliberately
adopted the latter clause of section 216, only to nullify the
first? Is it not more reasonable to say that the only inten-
tion of the latter clause was to recognize the shorter
periods of limitation of our sister states, in the person of the
emigrant from such states, and to protect him in the rights

which he possessed before he came to this State? By this construction, effect is given to the whole section.

Counsel for appellant has sought for the reasons which led to the enactment of the latter clause of section 216, and supposes he has found them in the language used by Judge Story, in *Le Roy* v. *Crowninshield,* 2 Mason, 151. It is true that in that case Judge Story seemed inclined to regard the bar of all remedies by the *lex loci contractus* as "a virtual extinction of the right in that place which ought to be recognized in every other tribunal as of equal validity."

The recognition of this idea is the supposed consideration which led to the adoption of the statute. In his brief on file the counsel for the appellant, after commenting on the language of Judge Story, in *Le Roy* v. *Crowninshield,* says: "May it not be pertinently asked why the learned Judge, with other eminent jurists before his day, entertained such doubts as to the correctness of the settled principles of the law relating to the question in hand? The only answer is, that the reasons which required a statute of limitations at all doubly required them to go to the extent reached by the inclinations of his mind."

And again he says, in reference to the doubt expressed by Judge Story: "Here was a direct appeal to legislative authority for relief against an evil arising out of the statutes of limitations greater than the evil they were intended to remedy. That appeal was responded to for the first time in this State when the clause of the statute under discussion was enacted."

This is an unfortunate source of inquiry, when followed up, for the theory of the appellant. The case of *Le Roy* v. *Crowninshield* was decided in 1820. Afterward, in 1839, the case of *M'Elmoyle* v. *Cohen,* 13 Pet. 312, was decided, Judge Story sitting in the case, in which all the judges assented to the rule that statutes of limitation strictly affect the remedy, and not the merits. It is said, that "the fullest examination was then made of all the authorities upon the subject, in connection with the diversities of opinion among

jurists about it, and of all of those considerations which in-
duced legislatures to interfere and place a limitation upon
the bringing of actions."

This language with reference to the case in 13 Pet. is used
by Mr. Justice WAYNE, in the exhaustive opinion delivered
in *Townsend* v. *Jemison*, 9 How. 407, decided in 1850, in
which the whole subject is elaborately reviewed; and it is
clearly shown that the idea advanced by Judge STORY in the
case in 2 Mason was erroneous, upon both principle and
authority.

In the case in 9 How., it is said by the court, in regard to
the doubt suggested by Judge STORY, that "the point had
been examined by him without any consideration of other
admitted maxims of international jurisprudence having a
direct bearing upon the subject."

Judge STORY, afterward, evidently saw and recognized his
error. In 1834, fourteen years after the case of *Le Roy* v.
*Crowninshield* was decided, Judge STORY gave to the profes-
sion his great work on the "Conflict of Laws," in which we
find him stating, without qualification, this doctrine:

"In regard to statutes of limitation or prescription of
suits, and lapse of time, there is no doubt that they are
strictly questions affecting the remedy, and not questions
upon the merits. They go, *ad litis ordinationem*, and not *ad
litis decisionem*, in a just juridical sense. The object of
them is to fix certain periods within which all suits shall be
brought in the courts of a state, whether they are brought
by or against subjects, or by or against foreigners. And
there can be no just reason, and no sound policy, in allow-
ing higher or more extensive privileges to foreigners than
are allowed to subjects. * * * * * * Not, indeed,
that there are no diversities of opinion upon this subject;
but the doctrine is established by a decisive current of well
considered authorities. * * * * * * But if the ques-
tion were entirely new, it would be difficult upon principles
of international justice or policy to establish a different rule."
Story Confl. Laws, secs. 576, 577, 578, *et seq.*

There is an express renunciation of the idea advanced in the case in 2 Mason, *supra,* and that, too, "not in deference to authority alone, but from declared conviction." Can it be that the legislature, by the adoption of the statute in question, intended to abolish a rule founded upon "just reason" and "sound policy," and to adopt one having no such foundation? Is not the statute fairly susceptible of another construction than the one leading to such a result? And is not that other construction the one I have given it?

It is clear to my mind, from the authorities cited upon the subject, and the quotations from Judge Story's own works, that any construction based upon the idea advanced by him in *Le Roy* v. *Crowninshield* must be erroneous. It is equally clear, that if any "appeal" was made by Judge Story "to the legislative authority" for the abrogation of the common law rule, such appeal was withdrawn and confessed to be groundless long before the adoption of our statute.

Nor can I give my assent to the proposition that we are to be exclusively governed by the printed statute. I am of the opinion that we must look to the enrolled acts deposited with the secretary of state. When a bill is introduced into the legislature, it is subject to amendment. When it is satisfactory to the house in which it is introduced, in its original form, or when it has been made *satisfactory by* amendment, it is engrossed under the direction of the house where it originated. It is compared, by a committee, with the original, and if found correctly engrossed, that fact is reported to the house. When the bill has passed both branches of the general assembly, it is then enrolled. The enrolled bill is compared, by a joint committee of both houses, with the engrossed bill, and if found correct, such fact is reported to both branches. When the bill has been enrolled, it is then presented to the president of the senate and the speaker of the house of representatives for their signatures, which signatures are countersigned and attested by the secretary of the senate and the clerk of the house of representatives. When the bill has been thus signed, it is presented to the

governor of the State, by the joint committee on enrolled bills, for his approval and signature. If he approve and sign it, it is then deposited with the secretary of state, who is by law made its custodian.

It is provided in the 14th section, article 5, of the constitution of Indiana, that "if any bill shall not be returned by the governor within three days, Sundays excepted, after it shall have been presented to him, it shall be a law, without his signature, unless the general adjournment shall prevent its return; in which case it shall be a law, unless the governor, within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of secretary of state," etc. 1 G. & H. 43.

The engrossed bills are deposited with the state librarian. The enrolled acts are deposited with the secretary of state, and are regarded as the original act. By the first section of an act approved March 7th, 1857, it is provided, "that it shall be the duty of the secretary of state, of the State of Indiana, to cause to be printed ten thousand copies of the acts of each session of the legislature," etc.

The first section of said act also provides for the distribution of the printed copies of such acts. The second section of said act reads as follows:

"Sec. 2. It shall be the duty of the secretary of state so soon as the printing of the acts shall be done, to certify the fact that he has compared the printed with the enrolled acts and joint resolutions, and found them correctly printed, which certificate shall be signed and dated by said secretary, and annexed in print to the volume of acts and joint resolutions; the said secretary is hereby authorized to use the engrossed bills, which he is to return to the state library, when the printing is completed."

By the above section, it is made the duty of the secretary of state to compare the enrolled and the printed acts, and to certify that he found them correctly printed. The statute does not declare the force and effect of the certificate. The law will presume that it has been correctly printed, but such

presumption will not be conclusive. The opinion of the court, in this case, gives to a printed copy greater weight and effect than it does to the original, which, in my opinion, violates every principle of evidence and opens the door to the grossest frauds. If it be true that the courts are bound to conclusively presume that the printed copy of the acts of the legislature is correct, what is to prevent a corrupt secretary of state from defeating the will of the people, as expressed by the legislature, and of imposing the most odious laws and oppressive burdens upon the people? In my opinion, the enrolled acts on file in the office of the secretary constitute the laws of the State, and that when there is a conflict between such enrolled acts and the printed copies, we are to be governed by the original, and not by the copy.

Such seems to have been the view taken of the question by this court in *Tarlton* v. *Peggs*, 18 Ind. 24. The question involved in that case was, when an act of the legislature took effect. This court say: "Among other duties devolved upon the secretary of state, is that of keeping and preserving the manuscripts containing the enrolled acts, etc., of the general assembly, etc. 1 R. S. 435. As this officer is thus, by the fundamental and statute law, made the custodian of recently passed acts of the legislature, his office is the place where the citizen should apply for official information in reference to such laws, both as to the time at which they shall take effect and the contents thereof; it would seem that when acts of the legislative department have, as in this instance, passed into the hands of this custodian, they should be regarded as having thus far passed through the ordeal provided by the constitution." An act of the legislature which contains an emergency takes effect without publication. If publication is necessary to the taking effect of an act, and the publication is incorrectly made, then the act, or that portion of it which is incorrectly printed, is not a part of the law.

This court, in *Evans* v. *Browne*, 30 Ind. 514, held that the enrolled acts imported absolute verity, and that to such acts the courts must look to ascertain the legislative will.

I regard the above decisions much in point. It is expressly declared that the citizen is to look to the enrolled acts on file in the office of the secretary of state, to ascertain the contents of such acts. As we have seen, the enrolled acts are prepared with great care and circumspection, which renders mistakes improbable, while it is well known that great and fatal mistakes are committed in printing, and that the grossest frauds could be perpetrated in having the legislative acts printed. The importance of the questions involved constitutes my excuse for the great length of this opinion. I concur in the judgment rendered on the ground stated by the court, but I am also of the opinion that the judgment should have been affirmed on the grounds stated in this opinion.

*J. McCabe*, for appellant.

*T. F. Davidson*, for appellee.