## WOESSNER, SHERIFF, ET AL. v. BULLOCK.

[No. 21,783. Filed February 23, 1911. Rehearing denied June 22, 1911.]

1. STATUTES.—*Depositing Vetoed Act with Secretary of State.— Laying Before General Assembly "at its next Session."*—The phrase "at its next session," as used in article five, §14, of the Constitution, providing that bills vetoed by the Governor after the adjournment of the General Assembly shall be deposited "in the office of Secretary of State, who shall lay the same before the General Assembly, at its next session," means the first session following, whether regular or special. pp. 168, 169.

2. STATUTES.—*Passage.—Special Sessions.—Powers.*—Special sessions of the legislature are not limited in their powers to legislate. p. 169.

3. CONSTITUTIONAL LAW.—*Construction of Doubtful Provisions.— Constitutional Debates.*—In determining the meaning of doubtful provisions of the Constitution the courts will examine the debates thereon in the constitutional convention. p. 169.

4. STATUTES.—*Passage Over Veto.—Failure of Secretary of State to Lay Vetoed Bill Before Extra Session.*—A bill vetoed by the Governor after the close of the session of the General Assembly and deposited by him with the Secretary of State does not become a law on its passage over his veto at the next regular session of the General Assembly, where a special session intervened and such bill was not laid before it. Jordan, J., dissents. p. 170.

5. OFFICERS.—*Secretary of State.—Duties.—Statutes.*—The Secretary of State is not the agent of the Governor in transmitting bills vetoed after the adjournment of the General Assembly to the next session of the General Assembly. p. 170.

6. STATUTES.—*Secretary of State.—Failure to Transmit Vetoed Bills.—Remedy.*—The General Assembly has the power to compel the Secretary of State to lay before it bills vetoed by the Governor after the close of the previous session. p. 171.

7. CONSTITUTIONAL LAW.—*Construction.*—Courts cannot substitute for clear constitutional provisions their own notions of what such provisions should have been. p. 172.

8. STATUTES.—*Enactment.—Judicial Notice of Steps Taken.*—Courts take judicial notice, without any allegations thereof in the pleadings, of the steps taken in the passage of a statute. p. 172.

From Marion Circuit Court (17,801); *Charles Remster,* Judge.

Action by Henry W. Bullock against Jacob Woessner, as sheriff of Marion county, and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Miller & Dowling, W. C. Nusbaum* and *Holtzman & Coleman,* for appellants.

MORRIS, J. — Appellant Woessner, sheriff of Marion county, on March 20, 1909, filed in the office of the auditor of Marion county a claim for allowance by the board of commissioners, for having committed a number of prisoners to the jail and also for having discharged a number of prisoners therefrom. His claim was filed pursuant to the provisions of the act of February 11, 1909 (Acts 1909 p. 8). This act, among other things, provides that "the sheriffs  *  *  * shall tax and charge the following fees to be paid by the county, except as hereinafter provided. Such amounts to be designated 'sheriff's fees,' which shall be the property of and belong to said sheriffs.  *  *  * For every person committed to jail, twenty-five cents. For discharging each prisoner from jail, twenty-five cents." These fees are commonly known as sheriffs "in and out" fees.

Appellee Bullock, a taxpayer, filed his complaint in the Marion Circuit Court against Woessner, the board of commissioners, the auditor and the treasurer of the county, to enjoin the payment of the claim. In his complaint, he avers that Woessner's claim is founded on the provisions of the act of 1909, *supra,* and that this act is invalid, because it was not passed by the General Assembly in conformity with the provisions of article 5, §14, of the Constitution of Indiana; that the bill for the act was passed by the General Assembly of 1907, and on the last day of the session was presented to the Governor, who, within five days thereafter, filed it with the Secretary of State, with his objections thereto; that thereafter, on September 18, 1908, the General Assembly met in extra session on the call of the Governor, but this bill was not during that session laid before the General Assembly

by the Secretary of State, neither was it called for by the General Assembly, nor was any action taken on it; that the General Assembly met in regular session January 7, 1909, and on that day the Secretary of State laid said bill before it, and on February 11, 1909, it was passed over the Governor's objections thereto.

Each defendant filed a demurrer to the complaint for want of facts, which demurrers were overruled, and defendants declining to plead further, judgment was rendered in favor of plaintiff, enjoining the allowance and payment of any portion of appellant Woessner's claim. From that judgment, Woessner appeals to this court, and assigns as error the ruling of the lower court in overruling his demurrer to the complaint.

But one question is involved in this appeal: If the act of 1909, *supra*, was passed by the General Assembly in accordance with the provisions of article 5, §14, of our

1.   Constitution, the circuit court erred; otherwise, the judgment should be affirmed.

Article 5, §14, of our Constitution reads as follows: "Every bill which shall have passed the General Assembly shall be presented to the Governor; if he approves, he shall sign it, but if not, he shall return it, with his objections, to the house in which it shall have originated, which house shall enter the objections, at large, upon its journals, and proceed to reconsider the bill. If, after such reconsideration, a majority of all the members elected to that house shall agree to pass the bill, it shall be sent, with the Governor's objections, to the other house, by which it shall likewise be reconsidered; and if approved by a majority of all the members elected to that house, it shall be a law. If any bill shall not be returned by the Governor within three days, Sunday excepted, after it shall have been presented to him, it shall be a law without his signature, unless the general adjournment shall prevent its return, in which case it shall be a law, unless the Governor, within five days next after

such adjournment, shall file such bill, with his objections thereto, in the office of Secretary of State, who shall lay the same before the General Assembly, at its next session, in like manner as if it had been returned by the Governor. But no bill shall be presented to the Governor within two days next previous to the final adjournment of the General Assembly.''

The phrase ''at its next session'' means the first session following, whether it be a regular or special one. The provisions of our Constitution, with reference to regular and special sessions are found in article 4, §9. The power of the General Assembly to legislate on any subject when convened in special session is not limited by the Constitution. Constitution, Art. 4, §9; Cooley, Const. Lim. (7th ed.) 222; *Morford* v. *Unger* (1859), 8 Iowa 82; *People, ex rel.,* v. *Rice* (1892), 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836. Had it been intended by the framers of the Constitution to limit to regular sessions the consideration of bills disapproved by the Governor, we should, naturally, expect such intention to be expressed by providing for such consideration by the ''next regular session,'' or by the ''next General Assembly,'' rather than by the ''next session.'' *People, ex rel.,* v. *Rice, supra.*

If the meaning of a constitutional provision is doubtful, courts may examine the proceedings of the convention that framed the provision, to aid in its interpretation. A consideration of pages 1447 and 1448, Vol. 2, Debates Indiana Constitutional Convention, reveals the fact that the members of the convention understood that the words ''next session,'' meant either a called or regular one. Counsel for appellant do not assert that this construction is erroneous, but contend that under the facts in this cause, when the Secretary of State failed to lay the bill, with the Governor's objections, before the General Assembly at its session of 1908, it became a law; that the legislature is under no duty to pursue its bills, in order

to pass them over the Governor's objections; that the Governor is under a duty to follow up such bills, in order to defeat them; that in doing so, he acts through the Secretary of State, who, for this purpose, is made his representative by the Constitution, and this bill, that passed both houses in the General Assembly of 1907, became a law when the special session adjourned, without the Secretary of State's having laid the bill before it, regardless of any action thereon by the General Assembly of 1909.

This contention cannot prevail. When the Governor, within five days after the adjournment of the General Assembly, filed the bill, with his objections thereto, in the office of the Secretary of State, he thereby prevented the bill from becoming a law, unless, at the next session of the General Assembly, on reconsideration, it should have been approved, notwithstanding the Governor's objections, by a majority of the members of each house. The Constitution requires the concurring acts of the two houses of the Assembly, and of the Governor in approving, or in determining to withhold his approval, in the manner pointed out. When the Governor files such bill in the office of the Secretary of State his power over it ends. *Tarlton v. Peggs* (1862), 18 Ind. 24; *People, ex rel., v. Devlin* (1865), 33 N. Y. 269, 88 Am. Dec. 377; *Powell v. Hays* (1907), 83 Ark. 448, 104 S. W. 177; *State v. Whisner* (1886), 35 Kan. 271, 10 Pac. 852; *People, ex rel., v. McCullough* (1904), 210 Ill. 488, 71 N. E. 602; 36 Cyc. 962. Nor can it justly be said that the Secretary of State is, in any manner, the agent or representative of the Governor. He is, by the fundamental law, required to keep and preserve the manuscripts containing the enrolled acts, etc., of the General Assembly. If he represents any department of the Government, it would be more logical to treat him as the representative of the General Assembly, because he is the custodian of its enactments. *Tarlton v. Peggs, supra.*

Counsel for appellant Woessner say that "it is unreasonable to assume that, in any possible case, the framers of the Constitution intended to place it in the power of the

6. Governor, in collusion with the Secretary of State, to defeat legislation as completely as if the veto were absolute. No fault can justly be found with this contention, but the facts here do not disclose such a condition. If there were a collusive attempt on the part of the Governor and the Secretary of State to defeat action by the General Assembly on a bill, it cannot be doubted that the General Assembly could find a way to procure the bill, and the objections of the Governor thereto, from the office of the Secretary of State. Constitution, Art. 4, §16, and Art. 6, §7; §9193 Burns 1908, §5591 R. S. 1881; *State* v. *Junkin* (1907), 79 Neb. 532, 113 N. W. 256. There is nothing suggested by the facts of this case to warrant the slightest criticism of the Governor. The Constitution clothes him with certain power over legislation, and in no respect did he transcend that power. Nor is there anything in this case that would warrant criticism of the Secretary of State in much greater measure than should be meted out to the General Assembly. The acts of 1907 were published April 10, 1907. They did not contain the act in controversy. The only inference to be legitimately drawn from its absence was its disapproval by the Governor, and its filing with the Secretary of State for consideration at the next session. In this particular instance, the members of the General Assembly at the sessions of 1907 and 1908 were the same, except as to those who had died or resigned in the interim. Even appellant Woessner was bound to know the condition of this bill. The reasonable presumption to indulge is that the Secretary of State and the members of the General Assembly either forgot about the condition of this bill, or misconstrued the constitutional provision. The sheriffs of the State had a special interest in this bill. Had any one of them, during the 1908 session, suggested the matter either

to the Secretary of State, or to the members of the General Assembly, it is to be presumed that the bill would have been laid before the General Assembly and considered.

It is also suggested by appellant Woessner's counsel, that the practical disadvantages to the public that might follow the sustaining of appellee's theory, should be considered. It is sufficient to say that constitutions import the utmost discrimination in the use of language, and courts are not warranted in substituting for the clear language of the instrument their own notions of what it should have been. *Greencastle Tp., etc., v. Black* (1854), 5 Ind. 557; Cooley, Const. Lim. (7th ed.) 93.

It is further contended by said appellant that inasmuch as the enrolled act in the office of the Secretary of State shows on its face that it was duly passed by both houses, and properly authenticated by the presiding officers of each, the court will not go back of the act, as thus appearing, but will conclusively presume that all necessary steps were taken; that the demurrer only admits the truth of the facts alleged in the complaint that were properly pleaded; that the allegation of the complaint, that the bill was vetoed by the Governor in 1907, and not again voted on in the session of 1908, is incapable of legal proof, and hence not properly pleaded; that the complaint stands therefore, as if it merely alleged that this bill was passed in 1907, and was presented to the Governor. This contention cannot prevail. The enrolled bill, on file in the office of the Secretary of State, with the acts of 1909, is signed, not by the presiding officers of the General Assembly of 1909, but by the officers of the assembly of 1907, and on its face shows it was not signed by the Governor, but was passed, notwithstanding the objections of the executive, by each house, in 1909, which fact is authenticated by the proper presiding officers of each house at that session. This court knows, regardless of the allegations of the complaint, that this bill was passed by both houses of the General Assembly in 1907,

and presented to the Governor, who, within the prescribed time, filed it in the office of the Secretary of State, with his objections thereto; that it was not acted on by the General Assembly at its next session held in September, 1908, but was considered by the General Assembly of 1909, and passed by each house thereof, over the objections of the Governor. *State, ex rel.,* v. *Wheeler* (1909), 172 Ind. 578; *Evans* v. *Browne* (1869), 30 Ind. 514, 95 Am. Dec. 710.

Because the General Assembly, at its session in 1908 did not pass the bill, notwithstanding the objections of the Governor, it never became a law, and the circuit court did not err in overruling appellant Woessner's demurrer to the complaint. Judgment affirmed.

Jordan, J., dissents.


## DISSENTING OPINION.

JORDAN, J.—I am unable to concur in the result reached in this case by the majority of the court. The question involved is one affecting not merely the right of appellant Woessner to the fees that he claims, but is one of great public concern, namely: Can the will of the people, expressed through their duly constituted representatives composing the legislature, be defeated by the failure or neglect of the executive department to comply with the express mandate of our Constitution.

The conclusion of the majority opinion is that the act in dispute was not a law, because the General Assembly at the session of 1908, did not pass the bill over the objection of the Governor. But certainly it cannot be said that the General Assembly should have acted in a matter, when it was afforded no opportunity so to do. The question in respect to the valid existence of the statute involved hinges upon the requirements of article 5, §14, of our Constitution, which is set out in the majority opinion. It will be observed that by this section it is provided that "every bill which shall have

passed the General Assembly shall be presented to the Governor; if he approve, he shall sign it, but if not, he shall return it, with his objections, to the house in which it shall have originated, which house shall enter the objections, at large, upon its journals, and proceed to reconsider the bill. * * * *If any bill shall not be returned by the Governor within three days, Sunday excepted, after it shall have been presented to him, it shall be a law without his signature, unless the general adjournment shall prevent its return, in which case it shall be a law, unless the Governor, within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of Secretary of State, who shall lay the same before the General Assembly, at its next session, in like manner as if it had been returned by the Governor.*" (Our italics.)

It will be observed that the part of article 5, §14, that I have embraced in italics, deals with the return of the bill by the Governor after it has been presented to him. After being presented to the executive, if it is not returned by him within three days, Sunday excepted, the Constitution declares that it shall become a law without his signature, unless the general adjournment shall prevent its return, in which case the Constitution prescribes that the Governor shall file such bill, together with his objections, in the office of the Secretary of State, who shall lay the bill and the Governor's objections thereto before the General Assembly at its next session, "in like manner as if it had been returned by the Governor."

The manifest purpose of the Constitution in requiring that a bill, after it is passed by the General Assembly, shall be presented to the Governor, is to afford him an opportunity to consider its provisions, and either to approve, by affixing his signature, or to disapprove, by withholding his signature, and returning it with his objections to the house in which it originated.

Requiring the return of a disapproved bill, as provided by

the Constitution, is for the evident purpose of affording the General Assembly an opportunity to reconsider it, and to pass it, notwithstanding the executive's objections, and thereby prevent his veto from becoming absolute.

The Governor of the State is the head of the executive department. *Massey* v. *Dunlap* (1896), 146 Ind. 350.

The office of the Secretary of State is but a subdivision of the executive department. *French* v. *State, ex rel.* (1893), 141 Ind. 618, 29 L. R. A. 113.

It is disclosed by the record in this case that the bill in question, after it was passed by the General Assembly at its session in 1907, was received by the Governor, but was not returned by him to the General Assembly, with his objections, on account of the general adjournment of that body. Accordingly, within five days after the general adjournment, the Governor filed the bill, with his objections thereto, in the office of the Secretary of State. In September, 1908, the General Assembly was convoked in special session upon the call of the Governor, at which session, under the provisions of the Constitution, the bill, together with the Governor's objections thereto, was required to be laid before the legislature, or returned to that body by the Secretary of State, "in like manner as if it had been returned by the Governor."

The return of a bill, disapproved by the executive, to the General Assembly is quite essential under the Constitution in order to prevent its becoming a law; as much so as is its presentation to him after its passage in order that it may become a law under the constitutional requirement.

When the Governor disapproved the bill here involved, he was, under the circumstances as shown in this case, empowered by the Constitution to file it, with his objections thereto, within five days next following the adjournment of the General Assembly, in the office of the Secretary of State, which office, as heretofore shown, is a subdivision of the executive department. After the bill is filed in the secretary's office, the Constitution points out the agency through which the

bill, with the Governor's objections thereto, shall be returned to the General Assembly at the session next following. The return, according to the Constitution, is to be in like manner as if it had been returned by the Governor had he vetoed it when the legislature was in session. Such return affords that body, at its next session, an opportunity to take such action upon the vetoed bill as the Constitution provides shall be had. The bill was not returned to the legislature at the special session of 1908; consequently, no opportunity was afforded that body to reconsider it and pass it over the Governor's objections. In my opinion, it must necessarily follow that at the close of this special session the bill became a law by the express mandate of the Constitution, regardless of the Governor's objections thereto.

If this is not true, then the veto of the Governor became absolute; a result in no manner contemplated by our Constitution, or by any other so far as I have been able to discover. It certainly was not intended by the framers and ratifiers of the Constitution that the Secretary of State, by sheer neglect or failure to comply with the constitutional mandate in respect to the return of the bill, could defeat the will of the legislature, or rather, that of the people as expressed through that body. If this is true, then our fundamental law should be amended or changed in order to prevent such a result in the future.

Doubtless the failure of the Secretary of State to comply in this case with the duty enjoined upon him by the Constitution was due to a mistake, and not to any intention on his part to prevent the bill from becoming a law; but the cause to which his failure or neglect may be attributed is not material, the result thereof must be the same, regardless of the cause that produced it.

It certainly is untenable and unreasonable to assert that it was in any manner the duty of the legislature at the special session of 1908 to go upon a voyage of discovery, in order to ascertain what action the Governor had taken in

respect to this bill that had been passed at the session of 1907, and presented to him at that session, or to see that the Secretary of State return it to the legislature as required by the Constitution. It had a right to assume that if the bill had been vetoed by the Governor, and filed with the Secretary of State, as authorized, the Secretary would discharge his constitutional duty and return the bill at the special session for legislative action. It is wholly untenable to assert that the fact that said act did not appear in the volume containing the laws passed at the session of 1907 was notice to the legislature, either actual or constructive, that the bill for the act had been vetoed by the Governor. Such fact could afford the legislative department no notice whatever. Hence it cannot in reason be said that that body was put upon inquiry, and that it was its duty to look after the bill and cause the Secretary of State to return it as provided, and if he did not, to take proceedings against him, as the majority opinion holds, in order to coerce him to discharge his duty. The case of *Tarlton* v. *Peggs* (1862), 18 Ind. 24, lends no support to the majority opinion. The sole question involved in that case was in respect to the power of the Governor, after he had filed the act with the Secretary of State, to file objections thereto, and thereby defeat it, as was claimed.

In my opinion the act involved is valid, and the judgment below should be reversed.