STATE of Indiana, Appellant,

Hoosier Horse Industries, Inc., (Intervening Defendant) Appellant,

v.

Joseph H. NIXON, Appellee.

No. 378S44.

Supreme Court of Indiana.

July 20, 1979.

Theodore L. Sendak, Atty. Gen., Donald P. Bogard, Chief Counsel, Ronald J. Semler, Deputy Atty. Gen., Indianapolis, for appellant State.

Henry J. Price, James A. Strain, Donald E. Knebel, Indianapolis, for appellant Hoosier Horse Industries, Inc.

David F. McNamar, Michael R. Franceschini, Indianapolis, Robert M. Gholston, Franklin, for appellee.

## ON REHEARING

HUNTER, Justice, dissenting.

On rehearing, I reiterate my former dissent and my concurrence with Justice De-Bruler. I believe the majority has incorrectly applied the principles governing the construction of constitutional provisions. Majority Opinion, (1979) reported at Ind., 384 N.E.2d 152.

It has long been held in our state that the Constitution is a fundamental instrument, not to be stretched and strained to meet the exigencies and necessities of the moment.

*Finney v. Johnson,* (1962) 242 Ind. 465, 179 N.E.2d 718; *Allen v. Van Buren Township,* (1962) 243 Ind. 665, 184 N.E.2d 25; *Woessner v. Bullock,* (1911) 176 Ind. 166, 93 N.E. 1057. In a written constitution, the people will be presumed to have expressed themselves carefully, leaving as little as possible to implication. *State v. Dearth,* (1929) 201 Ind. 1, 164 N.E. 489. Accordingly, the court, in construing a constitutional provision, may not substitute for the clear language of the constitution its own notions of what the provisions should have been. *Woessner v. Bullock, supra.*

However, courts are to use a liberal construction where there is an ambiguous term that must be liberally construed in order to uphold legislation, *Reed v. State,* (1859) 12 Ind. 641; or to preserve the rights of the people against governmental interference, *Pritchard v. State,* (1967) 248 Ind. 566, 230 N.E.2d 416; *Hively v. School City,* (1929) 202 Ind. 28, 169 N.E. 51; or to accommodate unforeseeable circumstances, *Spickerman v. Goddard,* (1914) 182 Ind. 523, 107 N.E. 2.

In the instant case, the term "lotteries" was not ambiguous as is clearly and carefully brought out in my brother Justice De-Bruler's dissent. I agree with him that the historical evidence leads inescapably to the conclusion "that the framers of the Indiana Constitution did not mean to encompass pari-mutuel wagering on horse racing within their prohibition of lotteries." Ind., 384 N.E.2d at 163. The Indiana Constitution is not written in symbolic language. The legislative history shows that there were separate statutes prohibiting betting on horse races both *before* and *after* the 1851 Constitution.[1] This is part of the long history of the separate and distinct treatment of lot-

1. Territorial Laws.
   1795. "A Law to Suppress Gaming" included separate sections on Horse Race Wagers and Lotteries.
   1807. "An Act for the Prevention of Vice and Immorality" included three separate sections on Horse Racing, Horse Race Wagering, and Lotteries.
   1810. "An Act authorizing a Lottery for the benefit of the Vincennes Library."
   Laws Under the First Constitution.
   1816. First Constitution did not mention lotteries.
   1818. First Criminal Code did not mention lotteries, but did include two sections on Horse Racing Wagers and Horse Racing and Wagers.
   1824. Revision of Criminal Code included separate sections on Horse Races and Wagers.
   1832. "An Act concerning lotteries" made lotteries illegal.
   1843. Revised Criminal Code included Horse Racing, Gambling, and Lottery with separate statutes for all three.
   Laws Under the Second Constitution.

teries and horse races in our law dating back through our state, territorial, colonial, and English law traditions. It is significant that even the Indiana Territorial Legislature preserved the English law distinction and experience that wagering on horse races and lotteries were separate and discrete subject areas. It should also be noted that there was absolutely no debate at the Constitutional Convention on the section proscribing lotteries. The simple term "lottery" meant just what it said and nothing else and requires no "liberal" interpretation.

The majority has apparently used sophistic reasoning in their application of the case of *Hovey, Governor v. State ex rel. Riley,* (1889) 119 Ind. 386, 21 N.E. 890, as that case stands for the proposition that where provisions are not entirely clear and free from doubt "practical exposition" is of controlling force. Since it has not been shown that there was an ambiguity as to the word "lottery," any reliance on *Hovey, supra,* is misplaced.

Furthermore, in the recent case of *Tinder v. Music Operating, Inc.,* (1957) 237 Ind. 33, 142 N.E.2d 610, the issue of what the term "lottery" encompassed was squarely before this Court. There we found that the word had a "commonly accepted meaning" and was distinct from other types of gambling.

It appears that the majority interpreted the simple word "lottery" as being symbolic of many other evils or "mischiefs," *sans* constitutional debate and contrary to prior Indiana case law.

I would grant rehearing, vacate the prior decision of this Court, and reverse the judgment of the trial court.

DeBRULER, J., concurs.

1851. Second Constitution includes Lottery, making it unconstitutional.
1852. Revised Criminal Statutes. Still three separate sections—Betting, Horse Racing, and Lottery.
1905. Revision of Criminal Code. Still three sections.
Present. Continues separate sections covering Gaming, Racing Horses, and Lottery.