The Board of Education of the City of Lawrence
v. Harry Dick *et al.*
**No. 13,804.** (78 Pac. 812.)

SYLLABUS BY THE COURT.

1. SCHOOLS—*High School.* A high-school grade of a city system of schools is a part of the common-school system.

2. ——— *"Common Schools" Defined.* The term "common schools," as used is section 2 of article 6 of the constitution, means free common schools.

3. ——— *High Schools in Cities of the Second Class—Tuition Unlawful.* That part of section 1 of chapter 224, Laws of 1889 (Gen. Stat. 1901, § 6305), which authorizes cities of the second class to maintain high schools in whole or in part by collecting a tuition fee for each pupil, violates section 2 of article 6 of the constitution, and is therefore void.

Error from Douglas district court; CHARLES A. SMART, judge.  Opinion filed December 1, 1904.  Affirmed.

*W. W. Nevison, John Q. A. Norton, L. H. Perkins,* and *C. E. Lindley*, for plaintiff in error.

*Bishop & Mitchell*, for defendants in error.

The opinion of the court was delivered by

GREENE, J. :  The plaintiffs, for themselves and 400 others similarly situated, brought this suit to restrain the board of education of the city of Lawrence, a city of the second class, from enforcing one of its resolutions previously adopted, authorizing the superintendent of its city schools to expel from the high school all resident pupils who should refuse to pay a tuition fee of $2.50 per term.  The petition alleged that the plaintiffs are residents and taxpayers of the city of Lawrence, and the parents of children between the ages of six and twenty years ;  that the board of education had previously passed a resolution to the effect that all pupils attending such school should be required to pay a tuition fee of $2.50 per term, and had authorized the superintendent of schools of the city to expel from such school all children then attending who should refuse to pay such tuition fee on or before a certain day therein named.  Upon the application of plaintiffs a temporary restraining order, prohibiting the board from enforcing the conditions of the resolution, was allowed and finally made permanent. It was held generally that the board of education had no power to impose a tuition fee upon the resident pupils as a condition precedent to attending such school.

The question involved is, Has the legislature of the

state of Kansas power to authorize the board of education of cities of the second class to impose a tuition fee upon resident pupils attending the high school? If this question be answered in the affirmative it must be held that the board acted with authority. The legislature attempted to confer such authority upon the boards of education of cities of the second class within the state by the enactment of section 6305, General Statutes of 1901. This section reads:

"The board of education shall have power to elect their own officers, except the treasurer; to make their own rules and regulations, subject to the provisions of this article; to organize and maintain a system of graded schools; to establish a high school whenever in their opinion the educational interests of the city demand; and to exercise the sole control over the schools and school property of the city; and maintain such high school, in whole or in part, by demanding, collecting and receiving a tuition fee for and from each and every scholar or pupil attending such high school."

Plaintiffs contend that the common schools of Kansas are free schools, and that this section, in so far as it attempts to confer power upon the boards of education of cities of the second class to impose a tuition fee upon pupils attending such schools, contravenes section 2 of article 6 of the constitution of Kansas and is void. The constitutional provision invoked reads:

"The legislature shall encourage the promotion of intellectual, moral, scientific and agricultural improvement, by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments."

The one great hope of the republic lies in the intelligence and morality of the individual citizen. To encourage, promote and inculcate intelligence and morality, large bodies of land were reserved by the

government from the public domain to many of the
states upon their admission into the Union, to be used
for a permanent school fund.   Section 34 of our or-
ganic act provides :

"That when the lands in the said territory shall be
surveyed under the direction of the government of the
United States, preparatory to bringing the same into
market, sections numbered sixteen and thirty-six in
each township in said territory shall be, and the same
are hereby, reserved for the purpose of being applied
to schools in said territory and in the states and
territories hereafter to be erected out of the same."

Recognizing the great need of popular education the
framers of our constitution, in addition to the pro-
visions hereinbefore quoted making it compulsory
upon the legislature to establish a uniform system of
common schools, inserted section 3 of article 6, which
reads :

"The proceeds of all lands that have been, or may
be, granted by the United States to the state, for the
support of schools, and the five hundred thousand
acres of land granted to the new states, under an act
of congress distributing the proceeds of public lands
among the several states of the union, approved Sep-
tember 4, A. D. 1841, and all estates of persons dying
without heir or will, and such per cent. as may be
granted by congress, on the sale of lands in this state,
shall be the common property of the state, and shall
be a perpetual school fund, which shall not be dimin-
ished, but the interest of which, together with all the
rents of the lands, and such other means as the
legislature may provide, by tax or otherwise, shall be
inviolably appropriated to the support of common
schools."

Ample provisions are found elsewhere for the annual
distribution of this fund to the several county treasurers
of the state, to be used in the support of the common
schools.   In addition to the fund thus provided the

legislature has made provisions for the assessment and collection of taxes for the support of the common schools, and enacted rules for their general management by officers to be elected by the voters of the locality where the schools are to be maintained.

In view of the numerous provisions made by the general government and the constitution of this state, as well as the history of its legislative enactments for the establishment and maintenance of a common-school system under which the children have been educated free for the past forty years, the suggestion that such schools are not free comes as a surprise, at least. This, however, cannot change the provisions of our constitution, and it is to such provisions we must look to determine whether the system of common schools it commands the legislature to encourage was to be a system of free common schools, or pay common schools. We can only determine this by ascertaining what was meant by the words "common schools," as therein used. If we find that they have acquired a technical meaning we must assume that they were used in the constitution in their technical sense. The high school, in cities of the second class, is a department of the common-school system of such cities, in which the higher grades are taught. (*Board of Education v. Welch*, 51 Kan. 792, 33 Pac. 654; *Whitlock v. State, ex rel. School District*, 30 Neb. 815, 47 N. W. 284.)

The term "common schools" is synonymous with "public schools." (*Jenkins v. Andover*, 103 Mass. 94.) Both have been defined by lexicographers and by judicial interpretation to mean "free schools." (*Merrick & others v. Inhabitants of Amherst & others*, 12 Allen, 500, 509; *Roach v. The Board of President and Directors of the St. Louis Public Schools*, 77 Mo. 484;

*Collins v. Henderson, &c.*, 74 Ky. 74; *Irvin v. Gregory,*
86 Ga. 605, 13 S. E. 120; *Roach, App., v. The Board of
President and Directors of the St. Louis Public Schools,
Resp.*, 7 Mo. App. 567; *The People v. The Board of Edu-
cation of Brooklyn*, 13 Barb. 400.)

In volume 25 of the American and English Encyclo-
pedia of Law, second edition, at page 8, it is said:

"Common or public schools are, as a general rule,
schools supported by general taxation, open to all of
suitable age and attainments, free of expense, and
under the control of agents appointed by the voters."

· Black, in his Law Dictionary, defines common
schools thus:

"Schools maintained at the public expense and ad-
ministered by a bureau of the state, district, or muni-
cipal government, for the gratuitous education of the
children of all citizens without distinction."

Anderson, in his Law Dictionary, says:

"Common or public schools are schools supported
by general taxation, open to all free of expense, and
under the control of agents appointed by the voters."

Rapalje and Lawrence define common schools to be:

"Public, or free schools, maintained at public ex-
pense, for the elementary education of the children of
all classes."

Bouvier, in his Law Dictionary, says that common
schools are "schools for general elementary instruc-
tion, free to all the public."

Chancellor Kent, in his Commentaries, volume 2,
page 196, in discussing free common schools in the
several states of the Union, and in many European
countries, uses the phrase. "common schools" ex-
clusively.

It must be assumed that the men who wrote our
constitution used the phrase "common schools" in

its technical sense as we find it defined. We think it follows, therefore, both from authority and reason, that the phrase "common schools" was used in the constitution in its technical sense, which means free schools, and that the common schools of Kansas are free schools. The act of the legislature attempting to authorize boards of education of cities of the second class to collect tuition fees for the admission of resident pupils into such schools violates this provision of the constitution of the state, and is therefore void.

A contention is made that the word "otherwise," found in the latter part of section 3 of article 6 of the constitution, by which the legislature is directed to add to the permanent school fund by taxes, or otherwise, is an express authority to add to it by charging a tuition fee. The word "otherwise," as there used, simply means that the legislature may set apart for public-school purposes such moneys as may come into the public treasury incidentally—such as fines imposed for violation of the laws of the state and items of a similar character. To charge and collect a tuition fee would not be adding to the permanent school fund.

The objection that the plaintiffs cannot maintain this suit on the ground that an individual cannot maintain a suit to restrain public officers from performing a public duty, unless such party can show some personal, pecuniary or special interest, or some injury which he may sustain other than the public generally, cannot be sustained. The exclusion of the plaintiffs' children from the public schools is a question in which they have a special and peculiar interest not held in common by the people of the state. While the people of the state and county have a general interest in the education of children, the exclusion of any particular child directly affects the parents of

that child in a much greater degree than it does the public. In *Craft v. Jackson Co.*, 5 Kan. 518, 521, it was said :

"If the injury is one that peculiarly affects a person, he has his right of action."

The judgment of the court below is affirmed.

All the Justices concurring.