Mamie Richardson v. The Board of Education of
Kansas City, Kansas, *et al.*

No. 14,667.    (84 Pac. 538.)

SYLLABUS BY THE COURT.

1. Constitutional Law—*Schools—General or Special Law.* A
law providing for the organization, maintenance and control
of common schools may be a general or a special law, but is
not a law of a general nature, because its subject-matter is
not one of a general nature.

2. ―――― *Not a Law of a General Nature.* Article 10 of chap-
ter 92, General Statutes of 1901, providing for the organiza-
tion, maintenance and management of high schools in cities
of the first class, is a general law, but not a law of a general
nature.

3. ―――― *General Law—Amendment or Repeal.* A general law
may be amended or repealed by a general or a special act, if
its subject-matter is not of a general nature.

4. ―――― *Separate Schools—Special Act—Validity.* Chapter
414 of the Laws of 1905 is a special act amendatory of sec-
tion 6290 of the General Statutes of 1901, and is not in vio-
lation of any provision of the constitution.

Original proceeding in mandamus. Opinion filed
January 6, 1906. Writ denied.

STATEMENT.

The plaintiff, Mamie Richardson, presents her peti-
tion for a writ of mandamus to compel the board of
education of Kansas City, Kan., and M. E. Pearson,
superintendent of the high school, to permit her to
attend the forenoon sessions of the high school. She
alleges that the board of education of Kansas City
passed a resolution separating the white and colored
pupils in the high school, and providing that the fore-
noon sessions shall be attended by white pupils and
that the colored pupils shall attend the afternoon ses-
sions; that she is a colored girl, and a resident of Kan-
sas City, possessing all of the educational qualifica-
tions necessary to admit her to the high school; that
she presented herself for admission to the high school

in the forenoon of September 12, 1905, and was refused admission; that she was then informed that the white children had the exclusive use of the building in the forenoon of each day, according to the direction of the board of education, and that the colored children would be admitted to the high school separate from the white children and would have the exclusive use of the high-school building at the afternoon sessions.

The board justifies its conduct under chapter 414 of the Laws of 1905, which authorizes it to separate the colored and white children in the high school, and to organize and maintain separate high schools for the white and colored children. It also alleges that the courses of study are the same for both sessions, and, upon the completion of either, the graduate is entitled to enter the state university. Chapter 414 of the Laws of 1905 reads as follows:

"AN ACT relating to the government of schools in Kansas City, Kan., and to amend section 6290 of the General Statutes of 1901.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That section 6290, being also section 182, article 10, chapter 92, of the General Statutes of 1901, entitled 'An act for the regulation and support of common schools,' be and the same is hereby amended so that the same shall read and be as follows: Sec. 182. The board of education shall have power to elect their own officers, make all necessary rules for the government of the schools of such city under its charge and control and of the board, subject to the provisions of this act and the laws of this state; to organize and maintain separate schools for the education of white and colored children, including the high schools in Kansas City, Kan.; no discrimination on account of color shall be made in high schools, except as provided herein; to exercise the sole control over the public schools and school property of such city; and shall have the power to establish a high school or high schools in connection with manual training and instruction or otherwise, and to maintain the same as a part of the public-school system of said city.

"SEC. 2. That original section 6290, being also section 182, article 10, chapter 92, of the General Statutes

of 1901, of which section hereof is amendatory, and all acts and parts of acts in conflict with the provisions of this act, be and the same are hereby repealed.

"Sec. 3. This act shall take effect and be in force from and after its publication in the official state paper.

"Approved February 22, 1905.

"Published in official state paper February 28, 1905."

This act is amendatory of section 1 of chapter 81, Laws of 1879 (Gen. Stat. 1901, § 6290), which provides as follows:

"The board of education shall have power to elect their own officers, make all necessary rules for the government of the schools of said city under its charge and control, and of the said board, subject to the provisions of this act and the laws of this state; to organize and maintain separate schools for the education of white and colored children, except in the high school, where no discrimination shall be made on account of color; to exercise the sole control over the public schools and school property of said city; and shall have the power to establish a high school, and maintain the same in whole or in part by demanding, collecting and receiving a tuition fee for and from each and every scholar or pupil attending such high school."

*Charles W. Frye, B. P. Waggener,* and *Waters & Waters,* for plaintiff.

*Nathan Cree, E. S. McAnany,* and *Thomas J. White,* for defendants.

The opinion of the court was delivered by

Greene, J.: The question decisive of this controversy is the constitutionality of chapter 414 of the Laws of 1905, as amendatory of section 6290 of the General Statutes of 1901. The plaintiff's contentions are: That the amended act is a general law providing for the organization, maintenance, government and control of high schools in all cities of the first class, and therefore cannot be amended or repealed by a special act; that chapter 414 of the Laws of 1905 is a special act, and is therefore inoperative as a repeal of

the general law. In order to understand and determine this question it becomes necessary to examine the section of the constitution involved. It reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted." (Art. 2, § 17; Gen. Stat. 1901, § 135.)

It will be observed that this section distinguishes between "laws of a general nature" and "general laws." With 'reference to this section subjects of legislation may be divided into three classes: (1) Those which the constitution specifically points out as subjects of general laws only, such as conferring corporate powers, etc.; (2) subjects of a general nature, which are as clearly within the inhibition of special legislation as those specifically excluded therefrom; and (3) subjects which are not of a general nature, and which may therefore be controlled by general or special laws within the discretion of the legislature. In the present case we are only concerned with the last two classes.

A law of a general nature is one whose subject-matter is common to all the people of the state. Sutherland defines a law of a general nature as follows:

"Laws of a general nature are such as relate to a subject of a general nature, and a subject of a general nature is one that exists or may exist throughout the state, or which affects the people of the state generally, or in which the people generally have an interest." (1 Lewis's Suth. Stat. Con., 2d ed., § 197.)

General laws are those "which apply to and operate uniformly upon all members of any class of persons, places, or things, requiring legislation peculiar to themselves in the matters covered by the laws." (Bouv. Law Dict. 877, "General Law.") The difference between a law of a general nature and a general law is that the subject-matter of the former must be one common to the people of the entire state, while

all that is required of the latter is uniformity of operation.

Whether or not the subject of an act which is either general or special in form is one of a general nature is always a question for judicial determination. If the subject-matter is one of a general nature, the rule that it must be governed by a law which shall have uniform operation throughout the state is mandatory. If, however, the subject-matter of the act is one not of a general nature, the law falls under the second subdivision of the constitutional provision, and the question whether it shall be governed by a special or a general law is one that lies wholly within the discretion of the legislature. (*Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915.)

The confusion which has arisen in the decisions of this court upon questions arising under this section of the constitution has grown largely out of the fact that no attempt was made to distinguish between those statutes whose subject-matter was of a general nature and those whose subject-matter was not of a general nature, and the absence of an attempt to distinguish between "general laws" and "laws of a general nature." In all these cases the statutes under consideration were special, and their subject-matter was not of a general nature; hence, it was correctly held that the legislature was the exclusive judge as to whether its object might be attained by a law general in form or by a special law. These cases were all collected, and the apparent conflict reconciled, by the late Justice Cunningham in *Rambo v. Larrabee,* 67 Kan. 634, cited above.

It will be observed that the question here does not involve the provisions of section 2 of article 6 of the constitution, which provides that "the legislature shall encourage the promotion of intellectual, moral, scientific and agricultural improvement, by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments." This provision has

been complied with, and the high school of Kansas City belongs to this system and is a common school of a higher grade. (*Board of Education v. Dick,* 70 Kan. 434, 78 Pac. 812.)

We agree with the contention of the plaintiff that the amended law is a general law, but it is not a law of a general nature. The consensus of opinion of the legislature and this court has always been that the organization, maintenance and control of schools is not a subject of a general nature within the meaning of the constitution. They have always been considered subjects of special legislation, and the enactment of special laws for such purposes has been the rule, and not the exception, in Kansas. Special acts have frequently been passed for such purposes notwithstanding the existence of a general law on the subject. In this particular, more perhaps than in any other, is shown the wisdom of that clause of the constitution, as construed by this court, which permits the legislature, when dealing with subjects that are not of a general nature, to pass special laws when in its discretion a general law cannot be made to serve the purpose.

Many schools have been organized and maintained in Kansas under special acts which it would have been impossible to maintain under any general law then in existence, or that could have been passed. Instances of this class of special laws are plentiful. Chapter 227 of the Laws of 1889 is a special law providing for the maintenance and control of the common schools in the city of Wichita. This special law was amended by another special law—chapter 188 of the Laws of 1897. Chapter 140 of the Laws of 1893 is a special act providing for the establishment of a county high school in Labette county. This act was held to be a valid exercise of the power of the legislature to pass a special act, notwithstanding there was in existence at the time a general law under which Labette county could have organized and maintained a high school. (*Eichholtz v. Martin,* 53 Kan. 486, 36 Pac.

1064.) Chapter 35 of the Laws of 1871 is a special act authorizing school district No. 2 in Neosho county to issue bonds to build a schoolhouse. When this act was passed there was a general law in force under which many school districts had built schoolhouses. The court, in passing upon the constitutionality of this act, in *Beach v. Leahy, Treasurer*, 11 Kan. 23, stated that there may have existed special reasons for passing this special act—that it was a matter of legislative discretion to determine whether their purpose can or cannot be expediently accomplished by a general law.

Chapter 90 of the Laws of 1886 is a special act excepting Kiowa county from the operation of a general law which provided for the organization of counties, and prohibited counties, townships and school districts therein from voting bonds until after the county had been organized for one year. The special act amended the general law, and authorized the county of Kiowa and any township or school district therein to vote bonds at any time after the organization of the county. This act was assailed because it was special, and because a general law of a uniform operation was in fact in existence which prohibited any county, township or school district from voting bonds within one year after the organization of the county in which such township or school district was situated. It was upheld in *Rathbone v. Board of Comm'rs*, 83 Fed. 125, 27 C. C. A. 477.

If the subject is one of a general nature the discretion of the legislature is at an end, and if it undertakes to enact a law on such a subject it must be general and of uniform operation throughout the state. Whether or not the organization of counties is a subject of a general nature we are not called upon to decide; certainly the voting of bonds for the building of a schoolhouse is not. An illustration may demonstrate that the organization and maintenance of schools cannot be a subject of a general nature within the meaning of the constitution. As illustrative of the injustice

and inequality of such a rule let us suppose a condition not at all improbable in a growing state. If in an unorganized county two trunk lines of railroads should determine to make the end of their divisions at the point of intersection, and one or both should establish machine-shops at this point, and within sixty days after the organization of the county the companies should place 5000 people there, an urgent demand would at once arise for the establishment of schools; thus it will be observed that the general law for the organization and maintenance of public schools would be wholly inadequate to meet this emergency. The legislature, in its wisdom and discretion, might constitutionally except such a county from the operation of a general law then in force which prohibited the voting of bonds within one year after organization. Many cases have actually arisen in Kansas which, while probably not so extreme, made the demand for the immediate organization, establishment and maintenance of schools equally important.

Instances might be multiplied where the legislature has enacted special acts providing for the erection, maintenance and control of both grammar and high schools. Indeed, the system could not be effectually maintained throughout the state except by the aid of special laws to meet special conditions.

We conclude that the subject-matter of the amended law is not one of a general nature, and for that reason the law does not fall under the first clause in section 17 of article 2 of the constitution. Therefore, it was exclusively for the legislature to determine whether the regulation of the high school in Kansas City could be accomplished better by a general or special law. Having tried the general law, and having discovered that its operation was not satisfactory, it was within its discretionary power to amend it by a special act; and with the wisdom of this course the courts cannot interfere. Whether or not a law of a general nature

Richardson v. Board of Education.

can be thus amended or repealed would present quite another question.

Since the legislature might have passed a special law in the first instance providing for the organization, maintenance and control of the high schools in each city in the state, it can in the exercise of its discretion at any time amend or repeal any part of a general law and enact special provisions for the government of any high school. There is no constitutional prohibition forbidding the legislature from amending a "general law" by a special act.

It is suggested that this law violates the fourteenth amendment to the federal constitution, but our attention is not called to any provision of this amendment that has been violated, nor to what is claimed by the plaintiff upon the question.

It is also suggested that the act of 1905 contains more than one subject. The subject of the general act, of which the act of 1905 is amendatory, is the regulation and control of schools in cities of the first class. The amendatory law does not treat of any other subject.

The writ is denied.

JOHNSTON, C. J., MASON, SMITH, PORTER, GRAVES, JJ., concurring.

BURCH, J. (dissenting) : I am not satisfied that the conclusion reached in the foregoing opinion is correct, and therefore withhold my assent from it.