No. 36,742

THE MARIADAHL CHILDREN'S HOME, *Plaintiff*, v. BELLEGARDE SCHOOL
DISTRICT No. 23, in Pottawatomie County, *Defendant*.

(180 P. 2d 612)

Opinion filed May 3, 1947.

*Charles Hughes* and *C. Harold Hughes*, both of Manhattan, were on the briefs for the plaintiff.

*Hal E. Harlan* and *A. M. Johnston*, both of Manhattan, were on the briefs for the defendant.

The opinion of the court was delivered by

HARVEY, C. J.: This is an original proceeding in mandamus. In the motion for the writ, filed July 29, 1946, it is alleged that plaintiff is a nonprofit, benevolent and charitable corporation organized and existing under the laws of this state, with its principal office in the city of Cleburne; that its charter was issued in 1895 and amended in 1939; that its purpose, as defined by its charter, is "to establish and maintain an Orphan Home under the care and supervision of said conference" (The Evangelical Lutheran Kansas Conference of the Evangelical Lutheran Augustana Synod of North America); that since its organization it has operated an orphan and receiving home and a home for neglected and dependent children and for children from broken homes in which one or both of

the parents are unable or unwilling to provide a home for the children; that it is nonsectarian and has more children living in the home that are not Swedish Lutheran than from homes which profess that faith; that during the past school year there were 21 children at the home, of whom 14 were of common school age, one of .high-school age, and six below school age; that the number varies from time to time and there have been as many as 35 children living at the home; that plaintiff has undertaken the custody, control and support of the children, but only in exceptional cases has been appointed legal guardian of a child; that because of the control and support furnished the children it is responsible under the truancy act (G. S. 1935, 72-4801 *et seq.*) for compelling the children to attend school; that the cost of support of the children in the home, exclusive of their education, has been about $40 per child per month, of which it has received about one-half that sum from parents or others legally responsible for their support, or from county boards of social welfare from which dependent children were sent to the home; that the home does not provide for and has no funds with which to hire a public schoolteacher for the children, or to pay tuition for them in a public school district in which the home is situated; the defendant is the school district in which the home and a farm operated by the home are located; that plaintiff is a resident taxpayer within the district; that from 1927 to the school year of 1945-'46 defendant school district either hired an extra teacher at its own expense to teach the children at the home maintained by plaintiff, or has received the children in the public school operated by the defendant school district, but that beginning with the school year of 1945-'46 defendant has refused to admit the children to the public school within that district, or to hire a teacher for them, or to pay tuition in another district, and that during the last school year the children attended school in the Cleburne grade school district, for which a tuition charge of a stated sum has been made and for which defendant school district has become liable, but refuses to pay. It is further alleged that all of the children at the home of plaintiff are residents of defendant school district, as defined by G. S. 1945 Supp. 72-1046, and that it is the plain duty of defendant to furnish tuition-free education to the children within the home operated by plaintiff in the school district. It is further alleged that plaintiff has no adequate remedy at law. The prayer is for a writ commanding

defendant to provide tuition-free education to school-age children in the home maintained by plaintiff in the district and for the payment of tuition this past school year.

Defendant in its answer admits the facts alleged by plaintiff, but denies the legal conclusions alleged by plaintiff, and specifically alleges that plaintiff is not a "person" within the meaning of G. S. 1945 Supp. 72-1046. It further alleges the action is not brought for and on behalf of any specific child or children, but is brought for and on behalf of plaintiff. It is further alleged that defendant is a small school district, with an assessed valuation of approximately $300,000, and that it is financially unable to provide school facilities for the children residing with plaintiff; that plaintiff contributes but little through taxes for the support of the school and that none of the children of the plaintiff is a bona fide, actual resident of the defendant school district. It is further alleged that there is no provision under G. S. 1935, 39-331, for the education of the children of plaintiff's home. The prayer is that the writ be denied.

We turn now to the legal questions argued. Counsel for plaintiff properly point out that under our constitution (art. 6, sec. 2), it is the duty of the legislature to establish "a uniform system of common schools." In *Board of Education v. Dick,* 70 Kan. 434, 78 Pac. 812, it was held the term "common schools" as used in our constitution "means free common schools." It is around this concept that most of our statutes pertaining to schools have been enacted. (See *State v. Smith,* 155 Kan. 588, 595, 127 P. 2d 518.) Our statute (G. S. 1945 Supp. 72-1107), without stating details not here important, provides that any child from six to eighteen years of age is "eligible to attend the elementary grades in the school district of his residence"; and G. S. 1935, 72-4801, provides "That every parent, guardian or other person in the state of Kansas, having control over or charge of any child who has reached the age of seven years and is under the age of sixteen years, shall require such child to attend continuously a public school or a private, denominational or parochial school taught by a competent instructor, . . ." This is one of the sections of our statutes pertaining to truancy. There is no controversy here about the constitutional provision or the statutes above cited. The contention of the parties arises from the interpretation of G. S. 1945 Supp. 72-1046 (being Laws 1943, ch. 248, sec. 36), which reads:

"Any person of school age whose natural or legal guardian resides within the limits of the school district or city, or whose family home with his father and

mother is not available to him by reason of the separation of his parents, or the death of either or both of them, and *who is living with a friend or relative or with a person who* is a resident within the limits of the school district or city, or *when such person is contributing the major portion of the cost of the support of such child,* shall be deemed to have a school residence in such district or city, in which he lives." (Emphasis supplied.)

Counsel recognize this statute as one fixing the residence of children for the purpose of attending school without limiting it to the residence or domicile of the parents, as recognized and appeared in *Sulzen v. School District,* 144 Kan. 648, 62 P. 2d 880 (1936). The authority of the legislature to do so is not seriously questioned here, and in view of our constitutional and many statutory provisions providing for the education of children we think there is no reason to question such authority.

Counsel for defendant argue that the statute is not applicable here for the reason that plaintiff is a corporation, as alleged and admitted, and hence is not "a person who" is a resident within the school district. We think the point is not well taken. In the early English law a person was defined to be either a natural person or an artificial one, such as a corporation (1 Blackstone Com. 123). Our statute, in force since 1868, pertaining to statutory construction (G. S. 1935, 77-201, *thirteenth*), reads: "The word 'person' may be extended to bodies politic and corporate." The word "person" has been held to apply to a foreign corporation (*N. M. R. R. Co. v. Akers,* 4 Kan. 453, 470; *Williams v. Railway Co.,* 68 Kan. 17, 21, 74 Pac. 600). Also it has been held to apply to the United States (*State v. Herold,* 9 Kan. 194) and to cities and counties (*Delaney v. City of Salina,* 34 Kan. 532, 9 Pac. 271; *State, ex rel., v. Comm'rs of Atchison Co.,* 44 Kan. 186, 24 Pac. 87; *State, ex rel., v. Barton County Comm'rs,* 142 Kan. 624, 51 P. 2d 33; *City of North Newton v. Regier,* 152 Kan. 434, 103 P. 2d 873). Counsel for defendant point out that the word "person" is not always construed to include corporations, citing *Osborne County v. City of Osborne,* 104 Kan. 671, 673, 180 P. 2d 233. In Bouvier's Law Dictionary it is said of the word "person": "The term is, however, more extensive than *man.* It may include artificial beings, as corporations," citing a number of cases from various states, and the author points out that the word "person," when used in the statute, generally is held to include corporations, unless the statute uses language which makes it clear that such use is not intended. It is worth noting that our corporation code (Laws 1939, ch. 152), pertaining to private cor-

porations organized for profit, or those not organized for profit (G. S. 1945 Supp. 17-3001) in part reads:

"Every corporation created under the provisions of this act shall have the power and capacity possessed by natural persons to perform all acts within or without this state. . . ."

Apparently this statute was in force when plaintiff's charter was amended in 1939. Certainly it was in force when the statute here being considered (Laws 1943, ch. 248, sec. 36) was enacted. In this case it is clear that the corporate powers which plaintiff exercises under its charter, namely to establish and maintain an orphan home, authorizes it to care for children much as an individual might do.

Counsel for defendant point out that chapter 248, Laws of 1943, is quite a comprehensive statute pertaining to schools, and in section 8 deals with who is a qualified resident of the district for voting at any school district meeting, and section 9 sets out the oath which one who attempts to vote at such meeting shall take with respect to his residence. Counsel suggest that the legislature may have used the term "resident" in those sections in the same sense that the term was used in section 36. We think the legislature might very well have used one definition of a resident for a voter at the school meeting and an entirely different test of a resident for a child with respect to its eligibility for attending school. Furthermore, it seems clear that the legislature did make such a distinction.

Counsel for defendant also point out that the children cared for by plaintiff do not come within the classification of G. S. 1935, 39-331. This is a section of a comprehensive chapter pertaining to insane, incompetent and dependent persons which, among other things, authorizes a board of county commissioners to purchase land and construct an asylum for the poor, to levy taxes for it, and to maintain it. The section cited provides in substance that when there are poor children of the asylum who cannot be bound out the county commissioners may arrange to have the children attend school and pay tuition therefor. We think the statute inapplicable here. Plaintiff is not conducting an asylum for the poor created and maintained by the county.

We feel confident in concluding that plaintiff comes within the definition of the term "person" as used in G. S. 1945 Supp. 72-1046, and that the children in its care are residents of the school dis-

trict in which the home is situated and are entitled to attend school in that district without the payment of tuition.

There are several decisions from other states in harmony with our conclusions, but we deem it unnecessary to cite those since our decision of necessity must rest upon our statutes.

This proceeding was brought to determine the rights of the parties. There is no animosity or ill feeling between them. We understand that they will conduct themselves in harmony with an adjudication of their rights. For that reason no writ will be issued at this time, the court retaining jurisdiction to issue an appropriate writ in the event such becomes necessary.

HOCH, J., not participating.