No. 44,684

STATE OF KANSAS ex rel. ROBERT C. LONDERHOLM, Attorney General, *Plaintiff*, v. IRVEN HAYDEN, JR., F. E. CRAIG, and ED UNGER, County Commissioners of Rawlins County, Kansas, *Defendants*.

(416 P. 2d 61)

Opinion filed June 25, 1966.

*J. Richard Foth,* Assistant Attorney General, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the briefs for the plaintiff.

*Robert A. Creighton,* of Atwood, argued the cause and was on the briefs for the defendants.

The opinion of the court was delivered by

HATCHER, C.: This is an original proceeding in mandamus brought on the relation of the Attorney General for the purpose of

compelling the commissioners of Rawlins County, Kansas to pay the tuition provided by K. S. A. 1965 Supp., 72-6916 (*b*) for students of Rawlins County attending the Colby Community Junior College.

The petition alleges the existence of a statutory duty on the part of the defendants to allow and pay the claim for "out-district tuition." The answer admits the existence of such statutory duty but contends that the statute imposing the duty contravenes the Kansas Constitution.

At this point a general review of the statute establishing a statewide system of junior colleges may be helpful. It provides for a state advisory council which is to assist the state superintendent in preparing a statewide plan for development of community junior colleges. Any one or more interested school districts may make a study and present a petition for the establishment of a community junior college meeting specified standards. Junior colleges existing at the time of the effective date of the act are "deemed approved" and upon receipt of a petition by such an existing junior college the state superintendent is to make an order providing for its organization as a community junior college.

Community junior colleges are bodies corporate comparable to other school districts. They may levy taxes up to five mills if their taxable tangible valuation is less than sixty million dollars and up to three mills if their valuation is over sixty million.

The sources for financing community junior colleges are provided by K. S. A. 1965 Supp., 72-6916—each student is to pay tuition at a rate to be established by the trustees but not to exceed seven dollars per credit hour and state aid will be granted at a uniform rate not less than two and not more than five dollars per credit hour. The balance of the operating expense for students residing within the district is to be raised by a tax levy upon the district property, and the balance of the operating expense for students residing within the state but outside the district is to be paid by the county of the student's residence through out-district tuition.

The commissioners of each county subject to pay out-district tuition are required to levy an out-district tuition tax sufficient to meet the county's obligation. Proceeds of the tax are to be placed in the general fund and upon receiving a statement of charges the commissioners "shall allow and pay the same promptly from the general fund of the county."

The levy for out-district tuition is outside of the aggregate levy

limit and all payments from the general fund for out-district tuition are exempt from the budget law to the extent of such payments.

The Colby Community Junior College notified Rawlins County that for the school year 1965-66, it anticipated an out-district tuition charge against that county in the approximate amount of $3,000. The defendant county commissioners sought the opinion of their county attorney who, under date of July 16, 1965, furnished a memorandum stating that in his opinion the out-district tuition provisions of the Community Junior College Act were unconstitutional. The defendants neither budgeted nor levied a tax for out-district tuition in the 1966 budget adopted in August, 1965.

In November, 1965, Colby Community Junior College submitted its statement of charges for out-district tuition for the fall semester in the amount of $1,504.07 for residents of Rawlins County attending the junior college. Defendants took no action upon the claim submitted but on February 2, 1966, through the county clerk of Rawlins County, formally notified the junior college that they did not intend to pay any claims for community junior college out-district tuition. It is stipulated that at all times the Rawlins County general fund was adequate to pay the claim in question, so the applicability of the cash basis law is not an issue.

The parties stipulated that the issues presented by the pleadings were:

"1. Does the authorization of L. 1965, ch. 417, § 16, of a county-wide ad valorem levy for community junior college tuition violate Art. 6, § 2, or Art. 6, § 10, of the Kansas Constitution?

"2. Does the statutory requirement of L. 1965, ch. 417, § 16, that community junior college tuition be paid from the county general fund violate Art. 11, § 5, of the Kansas Constitution?"

The state has presented its brief on the above issues. However, the defendants, in their brief, have abandoned their contentions that the act violates Article 6, Section 10 and Article 11, Section 5 of the Kansas Constitution and has added a new issue, *i. e.*, does the act violate Article 11, Section 1 of the Kansas Constitution? The state has filed a reply brief covering the new issue.

We will consider the questions as stated in the defendants' brief.

Two of the issues discussed at length by defendants are based on an invalid assumption. Defendants state:

"If, as plaintiff's brief contends, community junior colleges as established by the act are part of the common school system of Kansas, then the 'uniform system' provision of Art. 6, Sec. 2 of the Kansas Constitution applies."

They also suggest that, "if, as plaintiff's brief contends, community junior colleges are part of the common-school system of Kansas," the act providing for tuition chargeable to students as individuals for a "public school" violates Article 6, Section 2 of the Kansas Constitution.

We do not understand that the state contends that community junior colleges as created by the act in controversy are part of the common-school system as that term is used in Article 6, Section 2 of the Kansas Constitution which provides:

"The legislature shall encourage the promotion of intellectual, moral, scientific and agricultural improvement, by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments."

The defendants themselves, at another point in their brief, argue strenuously that community junior colleges as established by the act are not "common schools."

A common school is one which is open to all within the school boundaries and is supported at public expense through taxation, free of any charge to the attending students. (78 C. J. S., Schools and School Districts, § 1, p. 606; 47 Am. Jur., Schools, § 3, p. 298.) Ordinarily colleges and universities or those teaching grades higher than high schools are not considered common schools.

"Common schools," as that term is used in the Kansas Constitution, mean free schools common or accessible to all. In *Board of Education v. Dick*, 70 Kan. 434, 78 Pac. 812, this court approved the following definitions of common schools:

"In volume 25 of the American and English Encyclopedia of Law, second edition, at page 8, it is said:

" 'Common or public schools are, as a general rule, schools supported by general taxation, open to all of suitable age and attainments, free of expense, and under the control of agents appointed by the voters.'

"Black, in his Law Dictionary, defines common schools thus:

" 'Schools maintained at the public expense and administered by a bureau of the state, district, or municipal government, for the gratuitous education of the children of all citizens without distinction.'

"Anderson, in his Law Dictionary, says:

" 'Common or public schools are schools supported by general taxation, open to all free of expense, and under the control of agents appointed by the voters.'

"Rapalje and Lawrence define common schools to be:

" 'Public, or free schools, maintained at public expense, for the elementary education of the children of all classes.'

"Bouvier, in his Law Dictionary, says that common schools are 'schools for general elementary instruction, free to all the public.'

"Chancellor Kent, in his Commentaries, volume 2, page 196, in discussing

free common schools in the several states of the Union, and in many European countries, uses the phrase 'common schools' exclusively." (p. 439.)

It was further stated in the opinion that it must be assumed that the men who wrote our constitution used the phrase 'common schools' in its technical sense as we find it defined. It follows, therefore, both from authority and reason, that the phrase 'common schools' was used in the constitution in its technical sense, which means free schools.

We must conclude that K. S. A. 1965 Supp., 72-6901, *et seq.*, does not create junior colleges as part of the common-school system but creates a public system of community junior colleges with separate faculties and separate facilities of their own, and part of the operating expense is to be paid by the students in the form of tuition and the balance by taxation, both general and local. The provisions of Article 6, Section 2, of the Kansas Constitution relating to common schools, therefore, have no application to the act under consideration.

The defendants contend that the out-district tuition provided for in the act constitutes taxation without representation. They state:

"Defendants have no complaint about the establishment of community junior colleges per se. Defendants recognize the need for these schools. What defendants object to is the organizational structure of these institutions. If the legislature is going to impose a *duty* to educate every Kansas child through 14 years of schooling instead of 12, as has been the standard in Kansas for most of the 20th century, then it is submitted that the legislature must give the people the *right* to have a voice in the administration of the schools that they have a duty to support."

We do not agree with defendants' contention. The provisions covering out-district tuition are to be found in K. S. A. 1965 Supp., 72-6916 (*b*) and read as follows:

"The board of trustees, in accordance with rules and regulations of the state superintendent of public instruction, shall determine and collect an amount of out-district tuition to be charged for each student attending the community junior college whose residence is outside of the community junior college district. The board of county commissioners of any county charged with payment of out-district tuition shall levy an out-district tuition tax on all of the taxable property of the county sufficient to pay all out-district tuition charges authorized by this act. Out-district tuition tax shall be placed in the county general fund. Upon receiving a statement of charges for out-district tuition the board of county commissioners shall allow and pay the same promptly from the general fund of the county except out-district tuition shall not be paid for any student resident in a community junior college district except on prior approval of the chief school administrator of the community junior college district of which the student is a resident. The total out-district tuition

charged by a community junior college district shall be a sum equivalent to the number of full-time equivalent out-district students times the average maintenance and operating costs per full-time student of the community junior college less the tuition paid by the students and less state aid for the student and less anticipated federal aid. The board of trustees may use the actual figures of the preceding year of operation, if any, in determining tuition."

It will be noted that the legislature provided for the levy of the out-district tuition tax and how the amount was to be calculated. The legislature also provided to whom and under what conditions the money raised by the tax was to be paid out. Rawlins County had a representative in the legislature when the law was enacted. This is all the representation that is necessary.

Defendants quote from 51 Am. Jur., Taxation, § 50, p. 81, as authority for its contention that although the maxim of no taxation without representation is not actually incorporated into the Constitution of the United States or the Constitution of Kansas it has occasionally been invoked as limiting or prohibiting taxing power. Defendants did not read far enough; had they read the last sentence of the section from which they quoted they would have found the following statement:

". . . And although taxation and representation are indissolubly connected by the underlying principles of free government, payment by a town official of an order drawn on the town treasury by bridge commissioners appointed under a state statute authorizing them to assess the cost of maintaining highways over certain designated bridges against the towns within a certain area may not be refused upon the ground that the money in the treasury is raised by taxation of the residents of the town, who did not elect the commissioners, since *the representation of the inhabitants of the town in the legislature which passed the enabling statute is sufficient to satisfy the principle that there shall be no taxation without representation.*" (Emphasis supplied.)

Defendants' contention that the residents of Rawlins County would be taxed under the act without representation has no merit.

Defendants last contend that the provisions of K. S. A. 1965 Supp., 72-6916 (*b*) violates Article 11, Section 1 of the Kansas Constitution which provides:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, . . ." (Exceptions not material in this controversy.)

Defendants' contention is founded on the following statement:

"If out-district tuition is an assessment and taxation by the legislature, is such assessment and taxation uniform and equal? Sec. 16 (*b*) of the act provides how out-district tuition is computed. The out-district tuition charge at each school will be different. The number of students from each county will be different. And the taxable tangible valuation of each county is different.

It becomes apparent that such variables affecting each county's tax will result in an assessment and taxation by the legislature that is neither uniform nor equal."

Defendants' argument overlooks the fact that the provision for uniform and equal rates of assessment does not require that the levy and amount raised by the tax be the same in each taxing district. The constitution only requires a uniform and equal rate throughout the territory in which the tax is levied and the principle of equality is fully satisfied by making local taxation equal and uniform as to all property within the limits of the taxing district. (*State v. Lawrence*, 79 Kan. 234, 100 Pac. 485; *Carey v. Board of Education*, 113 Kan. 398, 214 Pac. 792; *School District v. Community High School*, 146 Kan. 380, 69 P. 2d 1102.)

In the act under consideration the taxing district is in each instance the county involved or the community junior college district involved, and within such taxing district any tax levied will be uniform and equal.

The act providing for the creation of community junior colleges fills an important gap in the educational system of the State of Kansas. It is an endeavor to place at least two years of post-high school education within commuting distance of all youth in the state. An examination of the 1964 report of the Advisory Committee on junior colleges to the Kansas Legislative Council reveals the need for a broad and comprehensive plan.

The doubling of the number of students seeking a college education will have a terrific impact on existing higher education services and on state finances. Changes in the Kansas economy and in the employment pattern reveal the need for technical and occupational training to equip young people for employment.

Community junior colleges provide an economical way of placing two years of post-high school education within reach of a maximum number of students. They provide education and training for a large body of technical and semiprofessional manpower in the labor force. They also provide the means by which a large number of young women who do not enter four year colleges can obtain special training for employment. They will tend to relieve overcrowding at the state schools. They will also be less expensive for the students and their parents as the student may room and board at home. It also makes possible two additional years of parental supervision.

A careful examination of the defendants' contentions discloses no constitutional infirmities in the act providing for the creation of community junior colleges, but rather discloses a carefully written law to supply in a practical way a necessary adjunct to the state's educational system.

No justifiable reasons are presented why the defendants, constituting the Board of County Commissioners of Rawlins County, have not complied with the provisions of K. S. A. 1965 Supp., 72-6916 (*b*).

Judgment is, therefore, granted plaintiff and it is ordered that the defendants acting as the Board of County Commissioners of Rawlins County forthwith pay to the Colby Community Junior College, out of the county general fund, the charges for out-district tuition as provided by K. S. A. 1965 Supp., 72-6916 (*b*).

APPROVED BY THE COURT.

FROMME, J., not participating.