LILLIE CHANDLER ET AL. *v.* SOUTH BEND COMMUNITY SCHOOL CORPORATION ET AL.

[No. 472A208. Filed June 27, 1974.]

*John P. Forhan,* St. Joseph Co. Legal Services, of South Bend, for appellants.

*Bruce R. Bancroft, John A. Burgess, Thornburg, McGill, Deahl, Harman, Carey & Murray,* of South Bend, for appellees.

## I.

## STATEMENT ON THE APPEAL

STATON, J.—An established policy of the South Bend Community School Corporation provides for the assessment of a textbook rental fee against its students for each term of enrollment. The rules and regulations implementing that policy were enacted by the School Corporation pursuant to expressed statutory provisions granting it the power to do so and detailing the rental fees permitted.[1] Lillie Chandler, individually and as a representative of a class of persons who assertedly could not afford the resulting assessments, initiated this action in the trial court seeking declaratory and injunctive relief against the enforcement of the rental policy. Miss Chandler requested that the collection of the fees be enjoined and that the enabling statute permitting the assessment of such fees be declared unconstitutional as being in violation of Article 8, Section 1 of the Indiana

---

1.  See IC 1971, 20-5-2-2(11); Ind. Ann. Stat. § 28-1710(11) (Burns 1970) and IC 1971, 20-10-43-1; Ind. Ann. Stat. § 28-5906 (Burns 1970).

Constitution which commands the General Assembly to ". . . provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all."

The suit was declared a proper class action and argument was heard by the trial court solely on the injunction issue. Stipulations submitted by the parties described the class represented and the nature of the fees charged. An exhibit was introduced delineating the policy and enforcement procedures of the School Corporation in the collection of rental fees. An additional oral stipulation, entered before argument on the merits, noted that the School Corporation had discontinued its enforcement procedure of threatened or actual expulsion of students who had failed to remit the required rental fee.

The trial court's judgment stated that the issue before it was ". . . whether or not a school board may rent textbooks to its students pursuant to Burns Indiana Statutes Annotated 28-5906, or whether that statute is unconstitutional as being in contravention of ARTICLE 8, SECTION 1 of the INDIANA CONSTITUTION of 1851." In ruling on that issue, the trial court looked to the rules of constitutional construction and the history of Indiana schools prior to the adoption of the 1851 Constitution to interpret the language of Article 8, Section 1. It concluded that:

"This court is convinced that the framers of the Constitution intended exactly what they said, in that tuition would be free and that a child would provide his own books and supplies. The Court is just as firmly convinced, however, that the framers would not tolerate a child being denied an education because he could not furnish his books and supplies, . . .

"All of which leaves me with the conclusion that a school may require a student to furnish all books and supplies, reasonably necessary for education (not extra-curricular) and may require the payment of reasonable rental fees reasonably necessary for education, but a school may not

expel a student, deny him an education, withhold grades, refuse advancement, withhold diploma or transcripts upon the ground that a student has not furnished his books or paid his rental fees if said student or his partnes [parents] are financially unable to pay same."

Lillie Chandler contends that the trial court erred in both its interpretation of the intent expressed in Article 8, Section 1 of the Indiana Constitution and in its ruling upholding the textbook rental statute and policy.

In our opinion below, we conclude that the trial court was correct in sustaining the textbook rental policy as constitutional. Article 8, Section 1 of the Indiana Constitution is clear in its mandate and in no way requires that textbooks be provided to students free of charge.

## II.
## STATEMENT OF THE FACTS

Lillie Chandler is a school age child who resides in South Bend, Indiana, and attends a public school operated by the South Bend Community School Corporation. She, by way of her father as next friend, initiated this action as a representative of a class of persons residing in the school district jurisdiction of the defendant School Corporation who could not afford the fees assessed for the rental of required textbooks. Textbook rental fees were assessed by the School Corporation pursuant to express statutory authority. Miss Chandler cited the incidence of threatened and actual expulsion from school and possible legal action for delinquent fees as the enforcement techniques used by the School Corporation to pursue the collection of fees assessed. In the trial court, she sought declaratory and injunctive relief against the enforcement of the rental fees policy, asserting that the practice was in contravention of a constitutional mandate which requires that the schools of this State be free of any charge to attending students. An oral stipulation

entered at trial, indicated that the School Corporation no longer pursued enforcement policies which resulted in the threatened or actual expulsion of students from its schools.

As required by Indiana law,[2] the School Corporation would furnish textbooks without charge to any pupil whose parent or guardian had completed an "Inability to Pay Form" which had been approved by the township trustee. There is no indication in the record of this appeal that Miss Chandler's parents or any member of the class which she represents had attempted to file the requisite form with the South Bend Community Schools Corporation.

## III.
### STATEMENT OF THE ISSUE

The sole issue presented by this appeal is:

Does Article 8, Section 1 of the Indiana Constitution prohibit a school corporation in this State from assessing a reasonable rental fee for the use of textbooks in its schools?

Our "Statement on the Law" which follows concludes that Article 8, Section 1 does not prohibit the assessment of a reasonable rental fee.

## IV.
### STATEMENT ON THE LAW

Lillie Chandler, individually and as a representative of a class of persons similarly situated, contends that the charges assessed by the South Bend Community School Corporation for the rental of textbooks used in its schools violated a constitutional mandate that the public schools of this State are to be provided free of any charge. Article 8, Section 1 of the Indiana Constitution of 1851 provides:

"Common schools.—Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the

2. See IC 1971, 20-8-8-13; Ind. Ann. Stat. § 28-5314 (Burns 1970), repealed by Acts 1973, P.L. 218 § 4, p. 1184. Replaced by Acts 1973, P.L. 218, ch. 3, § 28, p. 1113.

General Assembly to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement; and to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all."

The Indiana General Assembly has enacted a body of statutory law aimed at assuring a ready supply of satisfactory textbooks for the public schools of this State. Among those provisions is one specifically empowering the school corporations of this State to furnish textbooks to its students free of charge or pursuant to a rental program. See IC 1971, 20-5-2-2(11); Ind. Ann. Stat. § 28-1710(11) (Burns 1970). The rental policy of the South Bend Community School Corporation, attacked by Miss Chandler on this appeal, was enacted under that investiture of power and the dictates of IC 1971, 20-10-43-1, Ind. Ann. Stat. § 28-5906 (Burns 1970), which provides:

"Any board of school commissioners, board of school trustees, school township trustee, joint or consolidated school board, county board of education, or the governing body of any school corporation of this state may purchase from the publishers, at the net wholesale or net contract price, any textbooks or series of textbooks selected by the state board of textbook commissioners and the local textbook committee of such cities, towns or such counties outside of cities and towns as provided by law, and rent said textbooks or series of textbooks to any pupil in any public or nonpublic school in compliance with the minimum certification standards of the state board of education of the state of Indiana located within their respective school district or corporation at an annual rental not to exceed twenty-five per cent [25%] of the retail price of said books."

It is this provision which Miss Chandler specifically contends is unconstitutional. By necessity, however, she attacks every statutory provision within our school laws which presumes a textbook rental policy constitutional.

Indiana law further provides that school corporations renting textbooks to its students are required to provide

temporary aid to the parent or guardian of those students, subject to the compulsory attendance laws of this State, who cannot afford the fees assessed. See IC 1971, 20-8-8-13; Ind. Ann. Stat. § 28-5314 (Burns 1970).[3] The South Bend Community School Corporation complied with this provision by providing an "Inability to Pay Form" to those parents who requested assistance. No evidence presented in the case before us indicates that the parents of Lillie Chandler, nor any member of the class she represents, had applied for or had been denied the assistance provided by IC 1971, 20-8-8-13, *supra.* It should also be noted that the General Assembly has provided a means for any township, school corporation, city or town of this State to supply textbooks to the students of its elementary and high schools free of any charge to them. See IC 1971, 20-10-41-1, *et seq.* Ind. Ann. Stat. § 28-6001, *et seq.* (Burns 1970).

Against this legislative framework, Lillie Chandler contends that the assessment of a charge for the rental of textbooks by a public school corporation of this State violates Article 8, Section 1 of the Indiana Constitution. The thrust of her argument contends that the Indiana Constitution mandates the establishment of "free" common or public schools in this State.[4] A reading of that provision indicates that if any such mandate exists, it is not an express one. To accept Miss Chandler's contention, we must conclude that either or both of the terms "common school" and "tuition," as used in Article 8, Section 1, entails an inherent requirement that necessitates this result. We find neither argument persuasive.

In attacking the constitutionality of a statute which has been long recognized as a proper extension of the legislative

---

3. See footnote 2.

4. In *State* v. *O'Dell* (1918), 187 Ind. 84, 118 N.E. 529, the Supreme Court of Indiana held that the term "Common School" was synonymous to "public school" and includes high schools.

function, Miss Chandler must shoulder a heavy burden. A strong presumption favors the constitutionality of the rental policy assailed. *Cheaney* v. *State* (1972), 259 Ind. 238, 285 N.E.2d 265, 271; *Progressive Improvement Assoc.* v. *Catch-All Corp.* (1970), 254 Ind. 121, 123, 258 N.E.2d 403; *Alanel Corp.* v. *Indianapolis Redevelopment Comm.* (1958), 239 Ind. 35, 42-43, 154 N.E.2d 515. Before identifying and applying the rules of constitutional construction which control our treatment of Miss Chandler's contention, an insight into the prior interpretations accorded Article 8, Section 1 of our Constitution by the Supreme Court of this State merits attention.

Miss Chandler's challenge is not the first leveled at a public school textbook law in Indiana. In *State ex rel. Clark* v. *Haworth* (1889), 122 Ind. 462, 23 N.E. 946, our Supreme Court considered and met a constitutional attack upon an enactment of the 1889 General Assembly which had detailed the procedure for the procurement of textbooks for the public schools of this State. In upholding the statute, the Court stated, in reference to Article 8, Section 1:

> "These schools are owned and maintained by the State, and the State may prescribe the terms and conditions upon which pupils may enter them, except that it cannot disregard the constitutional injunction that 'tuition shall be without charge, and equally open to all.'" *State ex rel. Clark* v. *Haworth, supra,* 122 Ind. at 473-474, 23 N.E. at 950.

The statute allowing the state to contract for textbooks and require "patrons" of local schools to purchase them from designated dealers was expressly held constitutional. In a separate concurring opinion, one Judge observed, "The common schools of the State are *in the main* supported by the State, *and* the tuition is to be free." (Our emphasis) *State ex rel. Clark* v. *Haworth, supra,* 122 Ind. at 485, 23 N.E. at 954.

An earlier decision dealing with the propriety of local taxation for the support of public schools provides further insight into the purpose and intent of Article 8, Section 1

of our Constitution as seen by our Supreme Court. In *Robinson* v. *Schenck* (1885), 102 Ind. 307, 308-310, 1 N.E. 698, 699, the Court observed:

"... There can be no doubt as to the purpose of our people regarding common schools; both in the Constitution of 1816 and in that of 1851 are written provisions clearly expressing the purpose of the people to build a great and beneficent system in which tuition shall 'be without charge and equally open to all.' The prime object sought is the creation of a system that shall be sufficient and enduring.
. . .
"... The closest analysis will fail to discover a word that clouds or obscures the controlling purpose of the instrument. . . ."

In reviewing the role of the legislature in light of the command of the Constitution, the Court noted:

"The duty rests on the Legislature to adopt the best (school) system that can be framed; but they, and not the courts, are to judge what is the best system. There is this limitation on the legislative power, the system must be a 'general and uniform one' and tuition must be free and open to all; but the extent of this limitation is this and nothing more." *Robinson* v. *Schenck, supra,* 102 Ind. at 318, 1 N.E. at 705.

Thus, although not directly deciding the issue before us, the Supreme Court of Indiana has given no indication that our Constitution requires that the State provide textbooks to the students of its public schools free of a reasonable rental charge.

In addressing the interpretation of Article 8, Section 1 proposed by Miss Chandler, we are bound by established doctrines of constitutional construction. A fundamental canon of construction requires that we presume each word of the Constitution was carefully chosen and intentionally placed, "... as though it had been hammered into the instrument." *Chadwick* v. *City of Crawfordsville* (1940), 216 Ind. 399, 409, 24 N.E.2d 937, 942; see also *Allen* v. *VanBuren Township* (1962), 243 Ind. 665, 184 N.E.2d 25. As a corollary to that rule, words employed in the Constitution are generally given their ordinary meaning, unless it affirmatively appears from

the entire wording of the instrument that a contrary meaning was intended. *Ellwanger* v. *State* (1932), 203 Ind. 307, 180 N.E. 287.

We can find no basis for interpreting the word "tuition," to include textbooks used in public schools of the State. Black's Law Dictionary defines tuition as "The act or business of teaching the various branches of learning." Websters Third New International Dictionary adds ". . . the act of teaching: the services or guidance of a teacher: . . . the price of or payment for instruction." Neither definition states or implies that the word entails textbooks. Nor does the case law interpreting constitutional mandates of free tuition similar to that in Article 8, Section 1, indicate a contrary result. See *Rheam* v. *Bd. of Regents of University of Oklahoma* (1933), 161 Okl. 268, 18 P.2d 535, 538 and *State ex rel. Priest* v. *Regents of University of Wisconsin* (1882), 54 Wis. 159, 11 N.W. 472, 473.

The Supreme Court of Indiana held that the term "Common Schools" as used in Article 8, Section 1 of the Constitution, is synonymous with "public schools" and includes high schools. *State* v. *O'Dell* (1918), 187 Ind. 84, 118 N.E. 529. Only the State of Kansas has held that the term "common school," in and of itself, necessitates that no charge be assessed for a service incident to instruction, i.e. a "free" school. See *Board of Educ. for the City of Lawrence* v. *Dick* (1904), 70 Kan. 434, 78 P. 812, 814, 8 *Words and Phrases,* at 177; *Mariadhl Childrens Home* v. *Bellegarde School District No. 23* (1947), 163 Kan. 49, 180 P.2d 612 and *State ex rel. Londerholm* v. *Hayden* (1966), 197 Kan. 199, 416 P.2d 61. In Kansas, no constitutional provision mandates that tuition to its public schools is to be without charge. No reference is made in the cases cited above to any requirement that textbooks fall within the requirement that schools be "free." Kansas statutes provide that a school board may establish a textbook rental plan similar to that permissible in this State. See KAN. ANN. STAT. § 72-4141 (1972).

In support of her interpretation of Article 8, Section 1, Miss Chandler also relies upon a historical view of Indiana schools at and before the time of the 1850 Constitutional Convention. Consideration of contemporary history surrounding the enactment of a constitutional provision does provide a valid insight. A primary objective of constitutional construction is to ascertain the "common understanding" as to the meaning of a provision entertained by "both those who framed and those who ratified" it. *Kirkpatrick* v. *King* (1950), 228 Ind. 236, 91 N.E.2d 785; see also *State* v. *Gibson* (1871), 36 Ind. 389, 391-392. However, such extraneous evidence can only be of use where the provision is an ambiguous one. *Kelso* v. *Cook* (1916), 184 Ind. 173, 110 N.E. 987; *Whitcomb* v. *Young* (1972), 258 Ind. 127, 279 N.E.2d 566. We do not recognize an ambiguity. Nevertheless, even considering the historical insights provided by Miss Chandler, we find no convincing evidence that the framers of Article 8, Section 1, intended that either the term "Common Schools" or the word "tuition" should encompass free textbooks. The language of the provision is unambiguous, and it is not our province to substitute our or Miss Chandler's interpretation of what should have been stated. *Woessner* v. *Bullock* (1911), 176 Ind. 166, 172, 93 N.E. 1057.

A major portion of Miss Chandler's contention that the Indiana Constitution mandates free textbooks relies upon precedent from other jurisdictions reaching that result. In 1970, the Supreme Courts of Idaho and Michigan concluded that the respective constitutions of those states required that textbooks be provided to the students of their public schools at the public expense. See *Paulson* v. *Minidoka County School Dist. #331* (1970), 93 Idaho 469, 463 P.2d 935 and *Bond* v. *Public Schools of Ann Arbor School District* (1970), 383 Mich. 693, 178 N.W.2d 484. More recently, the Supreme Court of Montana has reached a similar result. *Granger* v. *Cascade County School Dist.* (1972), 159 Mont. 516, 499

P.2d 780. Each case is clearly distinguishable from the law in Indiana. The Constitutions of Idaho, Michigan and Montana each include a specific mandate that the legislature of those states establish a system of *free* public or common schools. See Article 9, Section 1 of the Idaho Constitution, Article 8, Section 2 of the 1963 Constitution of Michigan, and Article 11, Section 1 of the Montana Constitution. The Indiana Constitution commands only that the legislature provide a "general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." Article 8, Section 1 of the Indiana Constitution of 1851. To avoid this distinction, Miss Chandler relies upon the essential character of textbooks in the educational process. In considering this question, the Idaho Supreme Court stated in *Paulson* v. *Minidoka County School Dist. #331, supra,* 463 P.2d at 938-939:

> "Textbooks are necessary elements of any schools activity. They represent a fixed expense peculiar to education, the benefits from which inure to every student in equal proportion (ignoring differences in ability and motivation) solely as a function of his being a student. Unlike pencils and paper, the student has no choice in the quality or quantity of textbooks he will use if he is to earn his education. He will use exactly the books prescribed by the school authorities, that his classmates use; and no voluntary act of his can obviate a need for books nor lessen their expense. School books are, thus, indistinguishable from other fixed educational expense items such as school building maintenance and teacher's salaries. The Appellant may not charge students for such items because the common schools are to be 'free' as our constitution requires."

Express reliance was placed upon the existence of a mandate in the Constitution of Idaho that the common schools of that state were to be provided free of any charge. Similar reliance was placed upon this mandate in the Michigan and Montana decisions.

The mere existence of a constitutional mandate requiring free schools does not assure the conclusion that textbooks are

to be within its ambit. Article 8, Section 1 of the Illinois Constitution, prior to 1970, included such a provision. In *Hamer* v. *Board of Educ. of School District No. 109* (1970), 47 Ill.2d 480, 265 N.E.2d 616, 619-620, the Illinois Supreme Court restated its prior determination that:

> " 'A system of schools which permits all persons of school age residing in the district to attend classes and receive instruction in the subjects taught, without a tuition charge, provides free schools, and the fact that the parents of pupils financially able to do so are required to provide their children with text-books, writing materials and other supplies required for personal use of such pupils does not change the character of the school.' "

See also *Segar* v. *Bd. of Education of the School Dist. of City of Rockford* (1925), 317 Ill. 418, 148 N.E. 289 and *Hamer* v. *Bd. of Educ. of School District No. 109* (1973), 9 Ill.App.3rd 663, 292 N.E.2d 569. The Indiana Supreme Court voiced a similar conclusion in a decision concerning the power of a township trustee to purchase textbooks for individual students. In *Honeycreek School Township* v. *Barnes* (1889), 119 Ind. 213, 216, 21 N.E. 747, 748, the Supreme Court of Indiana stated:

> "Blackboards, charts, maps, tellurians and dictionaries are a class of articles, apparatuses and books which are not required for each individual scholar, but one of each would be sufficient, in most instances, for the whole school, and could be used by the teacher in giving instruction to the pupils. No person being required to furnish such common property for the benefit of the whole school, they can only be supplied by the trustee. The authority, (of the township trustee to purchase items of general use) certainly, cannot be extended to the right of purchasing general text-books for the use of each of the individual pupils."

However essential textbooks may be to education in the public schools of this State, Article 8, Section 1 of the Indiana Constitution does not mandate that the legislature provide textbooks to pupils free of charge. Miss Chandler has failed to rebut the strong presump-

tion favoring the constitutionality of a long established legislative policy. Absent a violation of a constitutional mandate, the power to determine how and by what means the educational system of this State shall be administered lies in the exclusive province of the General Assembly. *Fort Wayne Community Schools* v. *State ex rel. New Haven Public Schools* (1959), 240 Ind. 57, 60, 159 N.E.2d 708; *Robinson* v. *Schenck, supra.* For a similar result see *Carpio* v. *Tuscon High School Dist. No. 1 of Pima County* (1974), 21 Ariz.App. 241, 517 P.2d 1288.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Garrard, J., concur.

NOTE.—Reported at 312 N.E.2d 915.